Rose DANTI, Administratrix of the Estate of Andrew Danti, Appellant,

v.

John L. LEWIS et al., Trustees, United Mine Workers of America Welfare and Retirement Fund of 1950, Appellees.

No. 16351.

United States Court of Appeals District of Columbia Circuit.

Argued May 23, 1962.

Decided Nov. 20, 1962.

Petition for Rehearing En Banc Denied En Banc Dec. 19, 1962.

---

**346**

Mr. James C. Gregg, Washington, D. C., for appellant. Mr. Hugh Lynch, Jr., Washington, D. C., also entered an appearance for appellant.

Mr. Edward L. Carey, Washington, D. C., with whom Messrs. Val. J. Mitch and Charles L. Widman, Washington, D. C., were on the brief, for appellees.

Before BAZELON, Chief Judge, and WILBUR K. MILLER and BURGER, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

This appeal involves a coal miner's eligibility for a pension from the United Mine Workers of America Welfare and Retirement Fund of 1950. It also presents preliminary questions as to the nature and scope of the judicial review to which a rejected applicant is entitled when he asks a court to examine a decision as to eligibility made by those who administer the Fund.

The Fund was created by the National Bituminous Coal Wage Agreement. of 1950 pursuant to a section of the Labor Management Relations Act of 1947 [1] which authorizes coal operators to establish welfare funds

"(c) * * * for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents): *Provided*, That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer * *."

The Wage Agreement provided for a board of three trustees to administer the Fund, prescribed their duties in a somewhat general way, and with respect to the determination of applicants' eligibility said:

"* * * Subject to the stated purposes of this Fund, the Trustees shall have full authority, within the terms and provisions of the 'Labor-Management Relations Act, 1947,' and other applicable law, with respect to questions of coverage and eligibility, priorities among classes of benefits, amounts of benefits, methods of providing or arranging for provisions for benefits, investment of trust funds, and all other related matters."

In September, 1952, Andrew Danti, who had been a member of the United Mine Workers of America for 31 years, filed with the Trustees of the Fund an ap-

---

1. 61 Stat. 157, 29 U.S.C. § 186.

The agreement was entered into March 5, 1950, between certain coal operators and associations and the United Mine Workers of America. By its terms the operators were to pay into the Fund the sum of 30c for each ton of coal produced. Except for the statutory exempting provisions of this section, these payments would have been illegal under the Labor Management Relations Act.

plication for a pension at the rate of $100 per month beginning with October, 1952.

The application, prepared on a form furnished by the Trustees, stated he was 60 years old and had worked in the coal industry continuously from July, 1916, until June, 1946, when he retired because of "Failing Health—Heart Condition." It included a list of eight companies for which he had worked during that period. There was embodied in the application a certificate of Danti's local union that he had been a member since December, 1925, that the facts stated in the application were true and correct to the best of its knowledge and belief, and that Danti "was employed in the Coal Industry for a period of at least one year immediately preceding the date of his retirement." Also a part of the application was the union's District Secretary's certificate that Danti was a member in good standing, that the facts stated in the application were true to the best of his knowledge and belief, and "that proof as to service of applicant has been obtained * * *."

The Trustees did not act until February 26, 1953; then they denied the application for the recited reason that

"Applicant has not established proof of twenty (20) years' classified service in the Bituminous Coal Industry within the twenty-five (25) year period immediately preceding the date of his application."

An attempt to obtain a favorable result on reconsideration was denied May 29, 1957. In July 1958, Danti brought this suit against the Trustees in the United States District Court for the District of Columbia alleging he was a beneficiary of the Fund and that

"3. Immediately prior to, and on the date of May 29, 1946, the plaintiff was regularly employed in a classified job for an operator signatory to the National Bituminous Coal Wage Agreement, i. e., the Commercial Coal Company, Twin Rocks, Pennsylvania, and he was performing the duties of a 'loader', and the plaintiff had further approximately 30 years of classified service in the coal industry immediately preceding said date."

Thus he averred that he was one of the employees for whose benefit the statute permits the establishment of welfare funds. He also alleged he had reached the age of 60 years when he applied for a pension, that he was entitled thereto under the rules and regulations promulgated by the Trustees, but they had failed and refused to pay him. He demanded judgment for $7,000, the amount then accrued.

The Trustees' answer denied that Danti was a beneficiary of the trust entitled to a pension, and expressly denied the allegations quoted above. In the pretrial proceedings these issues were not changed, but it was there agreed

(a) that, at the time Danti's application was received by the Trustees in October, 1952, eligibility for a pension was governed by their Resolution 10, which was summarized as providing that an applicant must have been 60 years of age or over at the time of application; must have had 20 years of service in the coal industry; must have been employed in the coal industry for one year immediately preceding retirement; and must have retired subsequent to May 28, 1946.[2]

(b) that on February 26, 1953, when the Trustees denied Danti's application, eligibility for a pension was governed by their Resolution 30, which was summarized as providing that an applicant must have been 60 years of age or over; must have had 20 years of service in the coal industry within the 25 years immediately preceding his application; must have retired following a period of regular employment in the coal industry; and must have retired after May 28, 1946.

The administrative record before the District Court consisted of Danti's application, including the supporting certifi-

---

2. The exact language of the Resolution as to the last clause is: "Retired by permanently ceasing work in the Bituminous Coal Industry after May 28, 1946."

cates, filed in the fall of 1952, and the Trustees' denial of February 26, 1953. But the court did not confine its review to a consideration whether the administrative record supported the decision, but received evidence *aliunde*, tried the case *de novo*, and filed findings of fact and conclusions of law.

The trial judge found that Danti's last day of actual work in the coal industry was March 1, 1946, but that thereafter he made unsuccessful efforts to find employment therein. He also found that the Trustees' Resolution 10 provided that an applicant for a pension must have "Retired by permanently ceasing work in the Bituminous Coal Industry after May 28, 1946." He further found that the Trustees denied Danti's application for a pension, and had defended the action, "on the basis that Plaintiff did not meet the aforesaid requirements of eligibility for a pension."

Having so found, the trial judge reached conclusions of law, the first four of which are pertinent for present purposes:

"1. Judicial review of the decisions of the Trustees of this Trust is limited to insuring that the Trust is administered within the terms of the trust indenture and that beneficiaries are protected from arbitrary and capricious actions.

"2. The Trustees of this Trust have complete discretion to establish eligibility requirements for a pension and to interpret the same.

"3. Plaintiff failed to meet the requirements of eligibility for a pension as contained in Resolution 10

as interpreted by the Defendant Trustees.

"4. There is no evidence that the Defendant Trustees have acted in bad faith, arbitrarily or capriciously."

On the basis of these findings and conclusions, Danti's complaint was dismissed with prejudice. He appealed, but subsequently died and Rose Danti, his administratrix, has been substituted as appellant.

Although Danti sought only a money judgment, he was really attacking the Trustees' denial of his claim. We think it reasonable, therefore, to construe the action, as the Trustees do in their brief, as one "for judicial review of a decision of the Trustees of February 26, 1953, rejecting Plaintiff's application for a pension, thus denying him status as a beneficiary of this Trust."

It is conceded by the Trustees that their decision as to eligibility is subject to judicial review to determine "whether the Trustees have acted arbitrarily, capriciously or in bad faith; that is, is the decision of the Trustees supported by substantial evidence or have they made an erroneous decision on a question of law." [3]

On the administrative record before it, the District Court should have found the Trustees' decision arbitrary and capricious because it was based on Danti's failure to prove something he was not required to prove by Resolution 10, which the parties agree was the regulation governing eligibility at the time his application was filed. That Resolution required that the applicant must have "Completed twenty (20) years service in the Coal In-

3. The scope of judicial review of the Trustees' decision that an applicant is not a beneficiary of the Fund has been discussed in several decisions of the United States District Court for the District of Columbia, as well as in decisions of courts in other jurisdictions. See Hobbs v. Lewis, 159 F.Supp. 282 (D.D.C.1958); Kennet v. United Mineworkers of America, 183 F.Supp. 315 (D.D.C.1960). Compare Ruth v. Lewis, 166 F.Supp. 346 (D.D.C. 1958); Barlow v. Roche, 161 A.2d 58 (D.

C.Mun.App.1960). These authorities are divided as to whether an applicant for a pension has a contractual interest in the Fund as a third party beneficiary to the Wage Agreement, or whether his interest is merely equitable and conditioned on meeting the eligibility requirements reasonably established by the Trustees. Since our view of the present case does not require a determination of this controversy, we express no opinion on it.

dustry in the United States * * *." The application met the requirement of Resolution 10 as to years of service by giving a detailed statement of the companies by which he had been employed for more than 20 years. It was supported, as we have said, by certificates of the local union and the District Secretary. Resolution 10 also provided that

"Certification by a Local Union or by Local Unions, or by Districts of the United Mine Workers of America that an applicant served in the Coal Industry"

shall be deemed satisfactory proof of service for the periods covered thereby.

But the Trustees denied the application because they said Danti had not "established proof" that he met the different requirement as to years of service contained in their Resolution 30 which was in effect on February 26, 1953, but had been adopted some time after the application was filed. The record does not show that any evidence as to Danti's years of service was before the Trustees except the application and the certificates included in it. Consequently, we must regard the denial of February 26, 1953, as an appraisal of the probative value of those documents as to years of service. The Trustees violated their own Resolution by rejecting them as insufficient.

We hold, therefore, that the Trustees' decision of February 26, 1953, was arbitrary and capricious in denying Danti's application for not complying with a resolution which did not exist when it was filed, when in fact the application was sufficient to establish eligibility under their own standards at the time it was received.[4] We hold, further, that in this action to review the Trustees' decision of February 26, 1953, the District Court's duty was to determine whether the material then before the Trustees was sufficient to support their decision; that the only proof shown by the record to have been then before them not only did not support it but required the opposite conclusion; that the District Court erred in not so holding. Accordingly, the judgment appealed from is reversed.

We observe, however, that in the District Court the Trustees completely abandoned the reason for denial recited in the challenged decision and said they had since held Danti ineligible and denied his application because of their conclusion that he had retired from the coal industry on March 1, 1946, and consequently did not qualify under Resolution 10 which required an applicant to have "Retired by permanently ceasing work in the Bituminous Coal Industry after May 28, 1946."[5]

4. Even if it be thought that the Trustees, under their blanket authority to fix standards of eligibility, could change the regulations governing eligibility after an application had been received and deny it for failure to meet the changed requirement, we should be constrained to conclude that the blanket authority as so construed did not afford procedural due process, unless the applicant were afforded an opportunity—as Danti was not—to show qualification under the altered standard.

5. The first assertion of this changed reason for denial appears in a letter from the Director of the Fund to Danti's attorney, dated May 29, 1957, which was received in evidence by the District Court. The letter follows:

"This is in reply to your letter of May 17, 1957 regarding Andrew Danti.

"In accordance with Trust Fund regulations governing pensions, a miner must have worked in the coal industry after the establishment of the Fund, May 29, (sic) 1946, in addition to meeting other eligibility requirements in order to qualify for pension benefits.

"Since Mr. Danti did not work in the coal industry after March 1, 1946, his application for pension was necessarily denied. We regret that favorable reconsideration is not possible."

The regulations did not require that "a miner must have worked in the coal industry after the establishment of the Fund, May 29, 1946," in order to qualify for a pension. Quite differently, the regulation was, as we have shown, that he must have "Retired by permanently ceasing work" in the industry "after May 28, 1946." The Director's statement that "Mr. Danti did not work in the coal industry after March 1, 1946," did not amount

Although this contention did not appear in the administrative record before the District Court and should not have been accepted by it as the basis of the Trustees' decision, nevertheless the court tried the case *de novo* to determine the validity of the Trustees' newly asserted reason for the decision of February 26, 1953. It upheld the Trustees, stating in Finding No. 4:

"Plaintiff suffered a heart attack on March 3, 1946. He completed his last day of actual work in the coal industry on March 1, 1946. Plaintiff did not again work in the coal industry, although he made unsuccessful efforts to find such employment as he could perform consistent with his health condition."

This was the real basis of the trial court's conclusion that Danti failed to meet the requirements of eligibility for a pension as set forth in Resolution 10.

■ If it were held that the District Court permissibly tried the case *de novo* on a factual issue not presented in the administrative record before it, we should nevertheless reverse its judgment, as we have heretofore indicated. For, in concluding from Finding No. 4 that Danti was not eligible under Resolution 10, the trial judge in effect equated his finding that Danti's last day of actual work in the industry with a finding that, in the language of Resolution 10, he had "Retired by permanently ceasing work" in the industry at the end of that day. But such equating was negated by the very language of Finding No. 4, for in it the

District Court found that after March 1, 1946, Danti "made unsuccessful efforts to find such employment as he could perform consistent with his health condition." From this finding, it is plain that Danti did not permanently cease work in the industry after March 1, 1946, but was endeavoring to continue it, and so had not retired as of that day.

Moreover, the evidence before the District Court made it quite apparent that Danti did not permanently cease work in the industry on March 1, 1946, although that turned out to be his last day of actual work. The evidence showed that after Danti worked on March 1, 1946, which was a Friday, he suffered a heart attack on the following Sunday, March 3. After the heart attack, Danti was confined to his bed for eight weeks,[6] and so his complete disability extended almost to the end of May. For months following the attack, he drew Pennsylvania unemployment insurance which covers periods of temporary unemployment and is not available on retirement. From April 1, 1946, until June 3, 1946, the employees of Commercial Coal Company, Danti's last employer, were on strike and nobody worked except "company men"—a term which did not include Danti.[7] It cannot be said that his failure to work during that period showed he had permanently ceased work in the industry.

From what has been said, we would conclude, were it necessary to our decision, that the Trustees were arbitrary and capricious in deciding, if they did, that Danti was ineligible because his last day of work was March 1, 1946, and that

to a statement that he had permanently ceased work on that date, and so had retired before May 28, 1946.

Moreover, the Director was incorrect in saying the Fund was established May 29, 1946. It was established by the National Bituminous Coal Wage Agreement of 1950, executed March 5, 1950, which recited that "there is *hereby created* a Fund * * *." (Emphasis supplied.) Moneys remaining in welfare funds of earlier years may have been turned over to the Fund created in 1950; the record does not show whether so or not. But the Director was quite wrong in saying the

Fund was established May 29, 1946, and if on that basis the day was named in Resolution 10 as the cut-off date, the Trustees were arbitrary and capricious in so providing. This letter is another illustration of the Trustees' careless disregard for accuracy which characterized the denial of February 26, 1953, and made it arbitrary and capricious.

6. He remained under a doctor's care throughout 1947 and was finally told he could return to work on a limited basis.

7. This was part of an industry-wide strike.

the District Court erred in upholding that alleged decision because Finding No. 4, which adopted the contention of the Trustees, does not support the conclusion that Danti failed to meet the requirements of Resolution 10.

Hence the denial of Danti's application was arbitrary and capricious, whether it was based on the ground recited in the decision of February 26, 1953, or on the subsequently suggested ground that he had retired as of March 1, 1946. Consequently, we shall remand the case for the entry of a judgment holding that Danti was entitled to the pension for which he applied and directing the Trustees to pay to his administratrix the sums which had accrued at the time of Danti's death.

It is so ordered.

BAZELON, Chief Judge (dissenting).

I assume, as does the court, that our review is limited to determining "whether the Trustees have acted arbitrarily, capriciously or in bad faith." I think the court has exceeded this limit.

Danti filed his application for a pension on September 10, 1952. The Trustees first denied Danti's application on February 26, 1953, on the ground that he had failed to meet a requirement which was then in effect, but which had not been in effect at the time he filed his application. There has been no allegation that Danti was not permitted adequate opportunity to show that he qualified under the new standard. Thus, the only issue raised by the first denial is whether the retroactive application of revised qualifications is in itself arbitrary.

On May 29, 1957, the Trustees again denied Danti's application, this time on the ground that he had not met the Trustees' eligibility requirement (which was in effect both at the time of denial and the time of application) that a worker must have "retired by permanently ceasing work in the Bituminous Coal Industry after May 28, 1946." [1] The letter of denial stated that: "Since Mr. Danti did not work in the coal industry after March 1, 1946, his application for pension was necessarily denied." [2] There is no dispute over the facts that Danti completed his last day of actual work in the coal industry on March 1, 1946, suffered a heart attack on March 3, 1946, and made unsuccessful efforts until June of 1946 to find employment consistent with his health condition. Again there is no claim that Danti was denied an opportunity to show that he qualified under this standard. [3] Thus the only issue is whether the Trustees acted arbitrarily or capriciously when they construed "retired by permanently ceasing work" to refer to the last day of actual work rather that the day on which the worker ceased his efforts to find work. [4]

Whether revised standards of eligibility are to be applied retroactively, and whether "retired by permanently ceasing work" means the last day of actual work, are both precisely the kind of question

---

1. My brethren say we need not consider the second denial because it "did not appear in the administrative record before the District Court." It is not clear how the second denial was any less a part of the "administrative record" than the first one on which the majority does rule. Moreover, since the District Court did not rule on the first denial, and since the Trustees have not relied on it throughout this litigation, it appears that the second denial is the only one really in issue.

2. The letter was from the Director of the Fund who "is empowered to do all things, to perform all necessary acts, and to require the submission of evidence in order to effectuate the purposes of [Resolution 10].

3. The District Court found that "there is no evidence that the decision was made in bad faith or in an arbitrary or capricious manner."

4. Whether unsuccessful efforts to find employment constitute employment for purposes of the Trustees' various regulations is not a new question in this general area. See Szuch v. Lewis, 193 F.Supp. 831 (D. D.C.1960).

which the National Bituminous Coal Wage Agreement of 1950[5] seems to delegate to the discretion of the Trustees:

"Subject to the stated purposes of this Fund, the Trustees shall have *full authority*, within the terms and provisions of the 'Labor-Management Relations Act, 1947,' and other applicable law, *with respect to questions of coverage and eligibility*, priorities among classes of benefits, amounts of benefits, methods of providing or arranging for provisions for benefits, investment of trust funds, *and all other related matters.*" [Emphasis supplied.][6]

As Trustees, we might well have reached a more generous result. But the narrow scope of our review does not permit us to disturb rational determinations concerning the scope and application of regulations drawn by the Trustees pursuant to discretionary powers granted them by the trust instrument.

"It is a settled principle that trustees having the power to exercise discretion will not be interfered with so long as they are acting *bona fide*. To do so would be to substitute the discretion of the court for that of the trustee."[7]

The Trustees are at least as well qualified as the courts to decide such questions.[8] I would therefore affirm.

5. This is the agreement establishing the United Mine Workers Welfare and Retirement Fund of 1950 involved in the instant case.

6. Appellant makes no claim that the Trustees have acted contrary to the purposes of the Fund, the Labor-Management Relations Act, or other applicable law.

7. Shelton v. King, 229 U.S. 90, 94–95, 33 S.Ct. 686, 687, 57 L.Ed. 1086 (1913). See also 2 Scott on Trusts 1374–1395 (1956). Cf. Annot., *Rights and liabilities as between employer and employee with respect to general pension or retirement plan*, 42 A.L.R.2d 461 (1955).

8. A reviewing court necessarily views such issues in a vacuum, whereas the Trustees consider them against a background of practical considerations and facts not available to the court. For example, the trust fund is by the terms of the Agree-

ment subject to payments for several specified purposes other than pensions, "as agreed upon from time to time by the Trustees." The Trustees must therefore consider the allocation of available monies to the various purposes which they have chosen to promote. If it appears that one purpose is threatening to draw a disproportionate share of the fund, the Trustees may consider interpreting the eligibility requirements narrowly in order to balance the distribution of benefits. In this case, moreover, they may have considered such factors as the number of people in Danti's position and the relative difficulty of establishing when a worker stops seeking work as compared to when he stops working. Our inability to weigh such considerations militates against substituting our own interpretation of eligibility requirements for that of the Trustees.