Allen BURK, Plaintiff,

v.

John L. LEWIS, Henry G. Schmidt and Josephine Roche, Trustees, United Mine Workers of America Welfare and Retirement Fund of 1950, Defendants.

Civ. A. No. 2684–65.

United States District Court
District of Columbia.

Feb. 28, 1968.

Orlin L. Livdahl, Jr., Julian H. Singman, Landis, Cohen & Singman, Washington, D. C., for plaintiff.

Welly K. Hopkins, Harold H. Bacon, Joseph T. McFadden, Washington, D. C., for defendants.

## MEMORANDUM OPINION

GESELL, District Judge.

Plaintiff, a retired coal miner, seeks judgment against the defendant Trustees for monthly pension payments, from April 1, 1953, to date, and an order directing that he be placed on the rolls of pension eligibility.

It has been stipulated that the sole issue in the case is whether the defendant Trustees acted in bad faith, arbitrarily or capriciously in denying plaintiff's application for pension benefits on the ground that he did not meet all the eligibility requirements of Trustees' Resolution 10. The applicable provisions of that Resolution would make plaintiff eligible for a pension if he

had "retired by permanently ceasing work in the Bituminous Coal Industry after May 28, 1946" and had "been employed for a period of at least one year * * * immediately preceding his retirement." * This is not a trial *de novo*. Rather, it is in the nature of review of a final administrative determination and the decision herein is based upon the record that was before the Trustees.

Plaintiff argues that the administrative record compels the conclusion that he was employed by the Camp Creek Coal Company from October, 1951, until his retirement from the industry in November, 1952. In the alternative, plaintiff argues that he is entitled to a pension under Resolution 10 as that resolution has been interpreted in Danti v. Lewis, 114 U.S.App.D.C. 105, 312 F.2d 345 (1962).

Defendants argue that there is substantial evidence to support their decision that plaintiff did not meet the requirements of Resolution 10 and that the *Danti* case, supra, is not controlling here.

Both parties agree that in determining whether the Trustees acted in an arbitrary or capricious manner, this Court's function is to determine whether, as a matter of law, the Trustees' decision was supported by substantial evidence. Danti v. Lewis, 114 U.S.App. D.C. 105, 108, 312 F.2d 345, 348 (1962); Kosty v. Lewis, 115 U.S.App.D.C. 343, 346, 319 F.2d 744, 747 (1963); Miniard v. Lewis, 387 F.2d 864 (U.S.App.D.C., December 19, 1967); Szuch v. Lewis, 193 F.Supp. 831, 832 (D.C.1960); Kennet v. United Mine Workers of America, 183 F.Supp. 315, 318 (D.C.1960).

Substantial evidence has been defined as:

"enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." Illinois C. R. Co. v. Norfolk & W. R. Co., 385 U.S. 57, 66, 87 S.Ct. 255, 260, 17 L.Ed.2d 162 (1966).

The Supreme Court has also said that substantial evidence is:

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. * * * This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 619, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1965).

The first issue before the Court, therefore, is whether there was substantial evidence to support the Trustees' conclusion that plaintiff did not work "one year in the Bituminous Coal Industry immediately prior to retirement."

## I.

It is clear that the plaintiff retired in November, 1952. It is conceded that he did some work for the Camp Creek Coal Company between October 10, 1951, and March 20, 1952. It is conceded that he worked for several days later in 1952. Plaintiff claims to have worked until November 20, 1952, and his pension application was submitted in December, 1952.

Resolution 10 provides, in paragraph II–B.1:

"1. The following statements shall be deemed satisfactory proof of service for the period or periods covered by such statements:

a. Certification by a Local Union or Local Unions, or by Districts of the United Mine Workers of America that an applicant served in the Coal Industry;

b. Statements by persons who have personal knowledge of the ap-

---

* The Trustees have consistently interpreted this language to require an applicant to have been regularly employed for a period of twelve full calendar months immediately preceding retirement.

plicant's service in the Coal Industry."

Plaintiff's application was accompanied by a certification by his Union Local and a certification by United Mine Workers District Number 19. It was also accompanied by the sworn statements of several persons claiming actual knowledge of the fact that plaintiff worked from October 10, 1951, to November 20, 1952. Plaintiff argues that the *Danti* case holds that the Trustees *must* accept such proof and that to deny a pension in the face of this proof is to violate Resolution 10.

However, plaintiff is mistaken in this interpretation of *Danti*. In *Danti*, there was no other evidence before the Trustees, and on those facts it was held that it was arbitrary and capricious not to grant plaintiff a pension. Here, further evidence as to plaintiff's employment with the Camp Creek Coal Company was contained in a "time book" kept by Paris Burk, plaintiff's son and co-owner of the company, and in a bound book of account kept by Arthur Niday. The "time book" shows that plaintiff began work on October 10, 1951, and worked until March 20, 1952, when the mine worked out. In May, 1952, Paris Burk sold his interest to Niday, who continued the operation at a different location. Niday's account book indicates that plaintiff was employed for two days in June, 1952, and the only other employment was for four hours in September, 1952.

The Trustees contend that the Niday account book is substantial evidence in support of their conclusion that plaintiff did not work for a year. Plaintiff argues that the book is incomplete, that the records were not kept in the ordinary course of business, and that they have no probative value in the face of the fact that Niday signed a sworn statement, in July, 1953, stating that plaintiff was employed until November 20, 1952.

However, the dates were typed in separately in the 1953 Niday statement and on being deposed in 1967, Niday stated that he could only remember plaintiff working for a couple of months at one point and a few days thereafter. The issue, then, would seem to turn on the legal sufficiency of the account book.

 The account book is bound and contains consecutively numbered pages and entries for all of the months in question. It is a very crude ledger not kept in customary accounting form but it is clearly a working record upon which a relatively inexperienced person identified expenses, coal dug, and payroll disbursements to individual workers. Niday kept insisting at his deposition that there might be other records and he refused to say the records were kept in the ordinary course of business or that they were correct. The account book, however, is clearly a record kept in the ordinary course of business and there is no proof that there was any other record. The account book is substantial evidence in support of the Trustees' conclusion that plaintiff had not worked a full year prior to his retirement in 1952. Defendants were not arbitrary or capricious in denying plaintiff his pension on this basis.

## II.

Plaintiff argues that even if there was substantial evidence to support the Trustees' finding that he was not employed for at least one year between October, 1951, and November, 1952, he still meets the requirements for pension eligibility under Resolution 10 as that resolution has been interpreted in Danti v. Lewis, supra.

Except for the 1951–1952 period of employment, plaintiff last worked in the coal industry in May, 1944, after which he was required to stop work because of arthritis, rheumatism and arterial insufficiency. Plaintiff asserts that he always intended to return to work and that his employment with Camp Creek Coal Company is evidence of this continuing intent. There is no other proof of that intent.

Plaintiff cites the *Danti* case for the proposition that a miner's period of dis-

ability does not prevent him from being deemed to have worked regularly in the coal industry immediately prior to retirement if he had been working up to the time of his disability and if he maintained a continuing intent to return to work. In other words, plaintiff urges that a miner does not retire until he gives up the search for work; and that his period of disability, no matter how long, may not be held against him by the Trustees.

Given the fact that plaintiff retired from the coal industry in November, 1952, he argues that under the reasoning in *Danti*, he was eligible for a pension until he went back to work in 1951. With respect to the work done in 1951–1952, plaintiff relies on the last sentence of Section I of Resolution 10:

"Any applicant who meets all requirements of eligibility at any time after May 28, 1946, shall not be subsequently disqualified by returning to work in the Coal Industry for a period of less than one year."

Based on this proviso, plaintiff asserts that his work for the Camp Creek Coal Company cannot be held against him; that under *Danti*, his disability cannot be held against him either and that he was, therefore, eligible for a pension upon retirement in November, 1952.

The Court, however, cannot agree with the plaintiff's reading of the *Danti* case. *Danti* did not consider the "one year" provision of Resolution 10 and does not support the plaintiff's claim that he must be found to have "been employed for a period of at least one year * * * immediately preceding his retirement." *Danti* held that the Trustees were arbitrary in retroactively applying Resolution 30 and that the District Court erred in not holding for the plaintiff on the undisputed evidence before the Trustees. The District Court had tried the case *de novo* and had allowed the Trustees to defend on the ground that Danti had not retired "after May 28, 1946." Addressing itself to this problem, the Court of Appeals stated that the Trustees would have been ar-

bitrary and capricious if they had found that Danti retired prior to May 28, given the following facts: (1) Danti's last day of actual work was March 1, 1946; (2) he suffered a heart attack on March 3 and was confined to bed until approximately May 3; (3) for months following the attack he drew unemployment insurance which was not available on retirement; (4) from April 1 until June 3, Danti's fellow employees were on strike; (5) Danti subsequently made unsuccessful efforts to find such employment as he could perform consistent with his health condition.

*Danti* construed the word "retired" —which is a term of art. The Court was in no way presented with the "one year" problem. It simply stated that a man's disability, when coupled with an intention not to retire, and other important factors, would preclude a finding that he had actually retired less than three months prior to May 28, 1946, under the circumstances of that case.

Plaintiff argues that the reasoning in *Danti* must be applied to the "one year" problem in this case since a distinction between the date a man last worked and the date he retired is meaningless unless the man can also meet the requirement of at least one year's employment immediately preceding retirement. However, the Court of Appeals in *Danti* was not faced with this second requirement of Resolution 10 and the distinction it drew was a very meaningful one in the case before it.

There is no firm indication that the Court of Appeals would have found that Danti had worked for one year preceding his retirement. Indeed, the Court never even specified the date upon which Danti actually retired.

█ Plaintiff cites *Danti* as compelling the conclusion that he was eligible for a pension prior to his work for the Camp Creek Coal Company. To so conclude is to equate the equities in the two cases, to find that plaintiff had a continuing intent to return to work, to apply what is arguably dicta to a prob-

lem not present in the former case, and to shield a plaintiff for seven years rather than three months. To do this would be to open the door to recovery by plaintiffs who were disabled in their first year of work and who seek a pension nineteen years later, never having returned to the mines. Plaintiff has clearly read too much into the *Danti* opinion.

Plaintiff is not entitled to a pension as a matter of law and there was substantial evidence to support defendant Trustees' denial of his application.

Counsel to submit an appropriate order within one week of the date hereof.