B. G. HICKS, Plaintiff-Appellant,

v.

PACIFIC MARITIME ASSOCIATION et al., Defendants-Appellees.

No. 75–2852.

United States Court of Appeals, Ninth Circuit.

Jan. 6, 1978.

Gary P. Scholick (argued), of Littler, Mendelson & Fastiff, San Francisco, Cal., for plaintiff-appellant.

John F. Henning Jr. (argued), San Francisco, Cal., for defendants-appellees.

Before CARTER and HUFSTEDLER, Circuit Judges, and SMITH,* District Judge.

RUSSELL E. SMITH, District Judge:

The Pacific Maritime Association (PMA) is a collective bargaining agent for various shipping companies, including American President Lines (APL). Seafarers International Union of North America, Pacific District (SIU,PD) is the collective bargaining agent for its member unions. A pension plan instituted as the result of a collective bargaining agreement between PMA and SIU,PD is the subject matter of this action. The pension trust created as a part of the pension plan provides for a board of trustees which administers the plan.

Hicks, the plaintiff below, after 20 years of service as an electrician with APL, became disabled for sea duty and applied for and received a disability pension, effective April 1, 1969. In March 1969 Hicks accepted a job as port electrician for APL. He did not go to sea, but his duties took

---

* The Honorable Russell E. Smith, Chief Judge for the District of Montana, sitting by designation.

him aboard APL vessels when they were in port. After Hicks started working as a port electrician, the Marine Engineers Beneficial Association (MEBA) organized the port electricians, and as a result of a collective bargaining agreement between PMA and MEBA, Hicks became covered by the MEBA pension plan, to which APL was required to contribute. The trustees of the PMA–SIU,PD plan, learning that Hicks was covered under the MEBA pension, terminated his payments from the PMA–SIU,PD pension trust.

The pension plan in effect (herein Plan I) at the time of Hicks' retirement provided as follows:

L. *Retirement.*

To be considered retired, a seaman must withdraw completely from any further regular employment in the maritime industry, as herein defined or under any agreement to which the Union is a party and from any employment by the Union, and must have applied for a pension in accordance with the provisions of Article III and must be satisfying the provisions of Article III, D, Section 7, except that the Trustees may allow a Pensioner to work ashore for a steamship company or in the maritime industry on such terms and conditions as the Trustee may prescribe.

Regular employment in the maritime industry means any employment in any capacity on any vessel either American or foreign, governmental or commercial, seagoing or inland, and any other employment by any steamship company.

On September 12, 1969, the plan was amended. Under the amended plan (herein Plan II), plaintiff's retirement depended upon this language:

L. *Retirement.*

To be considered retired, a seaman must withdraw completely from:

(1) Covered employment,

(2) Any employment in any capacity on any PMA vessel or on any other vessel operated by an employer which is a Contributing Employer under this agreement,

(3) Any employment under any agreement to which the Union is a party,

(4) Any employment by the Union, or

(5) Any other employment for which contributions are payable hereunder, and must have applied for a pension in accordance with the provisions of Article III and must be satisfying the provisions of Article III, Section D, Paragraph 7.

The district court noted that the amendment did not provide for retroactive operation and that other provisions of the agreement were consistent with a nonretroactive application of the amendment.[1] With this conclusion we agree.[2] The court then determined that plaintiff was "employed by any steamship company" and hence not entitled to retirement and disability payments.

Hicks challenges the action of the district court on the ground that the trustee's action in suspending pension benefits was based on an interpretation of Plan II and a finding by the trustees that, because Hicks was covered by the MEBA pension plan he

1. The district court said:
   The express provisions of the agreement are consistent with such a position. Article XII of the agreement provides in pertinent part:
   "The provisions in the agreement, and all amendments thereto, shall remain in effect for the period covered thereby, despite a subsequent amendment thereof, unless the amendment specifically provides to the contrary".
   See also, Article III D(4) which states *inter alia* that "acceptance of benefits under any benefit schedule . . . shall constitute an election to continue under such schedule and

a waiver of benefits under any other schedule", suggesting that the employee is to be bound by the terms of the agreement at the time he seeks to obtain benefits thereunder. *Hicks v. Pacific Maritime Association, et al.,* No. 75–2852 at 11 n. 1 (N.D.Cal., Jan. 2, 1975).

2. *See Nelson v. American Air Filter Co.,* 472 F.2d 1169 (9th Cir. 1973); *Sparta v. Lawrence Warehouse Co.,* 368 F.2d 227 (3d Cir. 1966); *Hurd v. Illinois Bell Telephone Co.,* 136 F.Supp. 125 (N.D.Ill.1955), *aff'd,* 234 F.2d 942 (7th Cir.), *cert. denied sub nom., Seybold v. Western Electric Co.,* 352 U.S. 918, 77 S.Ct. 216, 1 L.Ed.2d 124 (1956).

was no longer eligible under the PMA–SIU,PD Plan II. Hicks contends that the trustees' interpretation of Plan II was incorrect. For the purposes of this opinion, we assume that Hicks is correct and that his coverage under the MEBA plan did not of itself make him ineligible under the PMA–SIU,PD Plan II. Hicks then asserts that the court erred in conducting a trial *de novo* and determining Hicks to be disqualified for a reason other than that given by the trustees. The following questions are posed: Was Hicks in fact disqualified; and, even if he was disqualified, should the action of the trustees be set aside because the trustees gave a wrong reason for the disqualification?

It is stipulated that Hicks was regularly employed in the maritime industry and received wages of about $24,000 per year. The plain language of Plan I applied to the stipulated fact leaves no doubt about his disqualification.

We have no quarrel with the rule announced in *Danti v. Lewis*, 114 U.S.App. D.C. 105, 109–110, 312 F.2d 345, 349–50 (1962), and quoted in *Sturgill v. Lewis*, 125 U.S.App.D.C. 335, 336, 372 F.2d 400, 401 (1966) as follows: " '[T]he District Court's duty was to determine whether the material then before the Trustees was sufficient to support their decision,' and not to try 'the case *de novo* on a factual issue not presented in the administrative record before it. . . .' " [3] Certainly, where there is a factual dispute, the parties to a pension controversy are entitled to the judgment of the trustees, a judgment that may be set aside by the court only if it is arbitrary or capricious,[4] and where a court makes a disposition on a fact issue not presented to the trustees, the parties are deprived of that right. Where, however, the facts appear with such certainty that the trustees could have reached but one conclusion, the parties suffer no prejudice if the district court, rather than the trustees, determines the facts.

Hicks asserts that the action of the trustees was arbitrary, capricious, and discriminatory because others situated as he was were not disqualified. The district court, following a judgment, reopened the case for the purpose of considering evidence on this point, and, at the end of the hearing, concluded that Hicks had not sustained his burden of proof. The finding is not clearly erroneous.

The judgment is affirmed.

HUFSTEDLER, Circuit Judge, dissenting:

I would reverse this case and remand it to the district court with directions to remand the factual issue to the trustees, following the rule of *Danti v. Lewis* (D.C.Cir. 1962) 312 F.2d 345, 349–50. I cannot join in my brothers' conclusion that the trustees could have reached only one conclusion about Hicks' disqualification under the language of Plan I. Especially is this true because Hicks alleged, and offered evidence to prove that the trustees had reached a contrary conclusion in respect of others who were identically situated to him.

---

**3.** In this case the fact of Hicks' employment by APL as a port engineer was before the trustees, and the finding that Hicks was covered by a MEBA pension plan was a finding that he was employed in a maritime industry.

**4.** *Rehmar v. Smith*, 555 F.2d 1362, 1371 (9th Cir. 1976).