[No. 3701–II.   Division Two.   April 30, 1980.]

WASHINGTON TEAMSTERS WELFARE TRUST FUND, *Plaintiff*, INDUSTRIAL EMPLOYEE BENEFITS TRUST, *Respondent*, v. MARIO DEPIANO, ET AL, *Petitioners*.

---

*Ronald S. Ripley,* for petitioners.

*Bruce McKenzie* and *John F. Young,* for respondent.

PETRIE, J.—In April 1974 the administrator of Industrial Employee Benefits Trust (IEBT) rejected petitioner Mario DePiano's claim for health care benefits which, he contends, were payable as a result of a heart attack which allegedly he had suffered in September 1973. On June 20, 1974, IEBT filed a complaint (not this action) against DePiano to recover $462.65 which, prior to rejection of the claim, it alleged it had paid based upon what IEBT considered false information furnished by DePiano.

On September 16, 1974, the Washington Teamsters Welfare Trust Fund (Teamsters Trust) filed a complaint (this action) against DePiano to recover $3,582.90 alleging it had mistakenly paid medical claims in that amount submitted to it by DePiano. On December 2, 1974, DePiano filed a motion to consolidate both causes of action supported by

an affidavit of his then counsel averring that premiums had been tendered to and claims had been filed with both funds, that both funds had denied liability, and that consolidation was necessary to avoid the possibility of inconsistent rulings. A month later, on January 3, 1975, IEBT presented and the court accepted a voluntary dismissal of its complaint against DePiano. On February 24 DePiano filed an amended answer and counterclaim against Teamsters Trust alleging his entitlement to benefits under that trust and also alleging damages resulting from that trust's wrongful rejection of those benefits.

The matter lay dormant for over 3 years when, on April 7, 1978, DePiano (with new counsel) filed a motion to compel joinder of IEBT as a third–party plaintiff in this action on the assertion that it was an indispensible party. That motion was granted on April 28, 1978; and, thereafter, on May 10, 1978, DePiano filed a counterclaim against IEBT alleging in part that he was covered under the terms of that trust for his September 1973 heart attack and that IEBT's refusal to pay benefits due and owing caused continuing mental anguish and emotional stress resulting in substantial damages.

On June 26, 1978, third–party plaintiff, IEBT, filed a motion to remand DePiano's counterclaim against it to the trustees of IEBT "for review and determination in accordance with their normal administrative hearing procedures." That motion was supported in part by the affidavit of J. Jeffery Ingman, IEBT's contract administrator, averring that he had reviewed the trust minutes from April 1974, and that he found no indication that DePiano's claim had ever been submitted to IEBT's trustees for action or review. Attached to Ingman's affidavit was a copy of the trust document as last amended on January 13, 1977. Article 10 of that document specifies "sole and exclusive procedures" available to participating employees, including provisions for requesting a hearing before the trustees and for arbitration upon dissatisfaction with action by the trustees.

IEBT's remand motion was granted by the Superior Court for Pierce County. DePiano filed a petition in this court for discretionary review of the remand order, and we granted that petition.

Some background information as to the nature of each trust seems appropriate at this point for a better understanding of the issues on review.

Teamsters Trust was a negotiated health and welfare trust presumably created pursuant to section 302 of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5). That trust document is not before us; and, insofar as review of this action is concerned, it appears to have ceased coverage of eligible employees on July 31, 1973. IEBT is a fund which dates back to 1970, also created pursuant to 29 U.S.C. § 186(c)(5), and thereafter amended several times. The last amendment, insofar as this review is concerned, occurred in 1977. The 1977 version of that trust has been made a part of the record; not so the 1970 edition. Obviously since 1975 that trust has also been subject to the provisions of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq.*

Insofar as this review is concerned, IEBT became operative on December 19, 1973, when, DePiano contends, his employer executed a collective bargaining agreement in which IEBT succeeded Teamsters Trust as the collectively bargained health care trust for eligible employees, retroactively to August 1, 1973. DePiano asserts that some confusion resulted initially during the transition from one trust to another, but that his employer paid premiums on his behalf to one or the other of the two trusts for all of 1973. In particular, he contends through his counterclaims that one or the other of these trusts should provide benefits resulting from the heart attack he allegedly suffered in September 1973.

IEBT's major thrust in support of the remand order is that DePiano has not exhausted the administrative remedies which he was obliged to pursue prior to seeking judicial review. In order to resolve that problem, we must first

decide whether or not DePiano was subject to any contractual or statutory obligation to seek internal administrative remedies following IEBT's denial in 1974 of his claim for benefits.

The only trust document in the record is the 1977 edition of IEBT. That instrument indicates on its face that it was initially executed on February 21, 1970, and was first amended thereafter in March 1975. The terms and conditions of the 1970 trust define DePiano's contractual rights and responsibilities for any benefits payable as a result of any illness DePiano may have suffered in 1973. *Danti v. Lewis,* 312 F.2d 345 (D.C. Cir. 1962). Although the 1970 edition of the trust has not been made a part of this record, the parties have stipulated that it contained no provision for administrative hearings. Absent any indication that DePiano was contractually required to submit his claim to the trustees after rejection by the trust's administrator and before seeking judicial review, we cannot hold that he failed in any contractual duty to exhaust administrative remedies.

The trial court appears, however, to have based the remand order on the fact that DePiano did not seek to enforce any right to benefits under IEBT until 1978, *i.e.,* when he filed the counterclaim against IEBT. Support for that theory is lacking, factually as well as legally. DePiano's 1974 effort to consolidate both actions then pending against him was based, according to his counsel's affidavit accompanying that motion, upon the theory that he was entitled to benefits under either Teamsters Trust or IEBT, or both. Furthermore, any provision of the trust which purported in 1975, or thereafter, to impose a duty to seek trustee review of a rejected claim after DePiano suffered his illness and after he ceased his employment could not affect the rights and obligations which had become vested at the time he suffered any covered illness. *Danti v. Lewis, supra.*

Notwithstanding the absence of any contractual obligation to exhaust administrative remedies, IEBT asserts that DePiano's obligation to do so stems from the statutory provisions of the Labor Management Relations Act

(LMRA), 29 U.S.C. §§ 141 *et seq.* Particularly, IEBT asserts that it is a trust established pursuant to the provisions of 29 U.S.C. § 186(c)(5). That section of the act does indeed authorize the creation of health care trusts for the benefit of employees, but we find no provision therein which mandates an internal contractual provision that trustees cannot delegate eligibility determinations to a neutral administrator or that employees who are denied eligibility by that administrator must, as a prerequisite to seeking judicial review, process their claims through the trustees independently of that administrator. As previously noted, the terms and conditions of the 1970 IEBT have not been presented to this court or to the trial court. We cannot surmise, in a vacuum, what contractual provisions existed at that time. All we know about that trust is that it contained no provision for administrative hearings.

IEBT directs our attention specifically to *Sturgill v. Lewis,* 372 F.2d 400 (D.C. Cir. 1966), for the dual propositions that, notwithstanding absence of any contractual provisions for internal administrative review, (1) trustees must provide a fair hearing to an applicant who seeks trust benefits, and (2) factual issues of eligibility for benefits under a trust cannot be tried de novo in court. We view *Sturgill* as declaring solely that fair hearings must be made available. We do not find in *Sturgill* a declaration that, absent contractual provisions for hearings, an applicant must demand one prior to seeking redress in court. Nevertheless, even if we were to agree with IEBT's asserted propositions as accurate statements of the law in general, the doctrine that internal remedies must be exhausted is, itself, subject to several exceptions. Exhaustion is excused not only when resort to such procedures would be futile, but also when a claimant has been wrongfully denied meaningful access to those procedures and where the available remedy is inadequate. *Cooke v. Orange Belt Dist. Council of Painters 48,* 529 F.2d 815 (9th Cir. 1976); *Taylor v. Bakery & Confectionary Union & Indus. Int'l Welfare Fund,* 455 F. Supp. 816 (E.D.N.C. 1978).

In the case at bench, DePiano has been denied benefits by both trusts and has been called into court by both trusts shortly after those denials. His counterclaims against each trust seek not only benefits under one or the other trust; they also seek damages for emotional stress and mental anguish caused by those wrongful rejections.

In view of the totality of circumstances involved in this dispute, we hold that a trial on all the issues in one forum is the appropriate procedure.

The remand order is reversed, and the cause is remanded for trial on the merits.

PEARSON, A.C.J., and PETRICH, J., concur.