**Mary BRUG, Plaintiff-Appellant,**

v.

**The PENSION PLAN OF the CARPENTERS PENSION TRUST FUND FOR NORTHERN CALIFORNIA, Defendant-Appellee.**

**No. 80–4321.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 15, 1981.

Decided Feb. 12, 1982.

Rehearing and Rehearing En Banc Denied April 16, 1982.

Nancy L. Ober, Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., for plaintiff-appellant.

Michael B. Roger, Van Bourg, Allen, Weinberg & Roger, San Francisco, Cal., argued for defendant-appellee; Victor J. Van Bourg, San Francisco, Cal., on brief.

Before CHOY and HUG, Circuit Judges, and GRAY *, District Judge.

HUG, Circuit Judge:

This is an action by a clerical employee of a union claiming pension benefits for disability retirement. She became a beneficiary of the Pension Plan under an amendment, adopted by the Trustees of the plan, effective June 1, 1975. The amendment and implementing regulations included certain clerical workers as beneficiaries. In March 1976 the Trustees rescinded the amendment and the regulations. Prior to the rescission of the amendment and regulations she became disabled and made application for disability retirement, for which she was eligible at the time. The Trustees delayed action on her application until after the rescission of the amendment and then denied her benefits on the basis that she was not an employee covered by the plan. The district court upheld the action of the Trustees and entered judgment against the plaintiff. The issue is whether the rescission of the amendment could be applied retroactively so as to exclude the plaintiff as a covered employee. We hold that it could not, and that the action of the Trustees was arbitrary and capricious in not applying the terms of the Pension Plan in effect at the time that she applied for the pension benefits for which she was eligible. We therefore reverse the judgment of the district court.

## I

### FACTS

The Carpenters Pension Trust Fund for Northern California is a jointly administered employee benefit trust created by a Trust Agreement executed in 1957 by various contractors' associations and the district councils and locals of the Carpenters Union. The Trust Agreement initially provided for pension benefits for the employees of the contractors who were required to make contributions pursuant to collective bargaining agreements with the Carpenters Union. Effective in 1965 the local unions, the district councils, and other labor organizations affiliated with the Carpenters Union were also permitted to make contributions to the pension fund for their employees.

The Trust Agreement and the Pension Plan adopted pursuant to the Trust Agreement both contained an identical provision defining an employee covered by the Pension Plan. The provision states:

> The term "Employee" means any employee of an Individual Employer who performs one or more hours of work covered by any of the Collective Bargaining Agreements. The term "Employee" shall also include employees of Local Unions and District Councils on whose behalf contributions are made to the Pension Fund pursuant to regulations adopted by the Board of Trustees; provided the inclusion of said employees is not a violation of any existing law or regulation.

Nothing in the Trust Agreement or the Pension Plan limits the categories or classifications of union employees for whom pension contributions may be made.

Article II of the Pension Plan provides:

* The Honorable William P. Gray, United States District Judge for the Central District of California, sitting by designation.

All Employees of Local Unions and District Councils on whose behalf contributions are made to the Pension Fund pursuant to regulations adopted by the Board of Trustees are also eligible to participate in the benefits provided under the Pension Plan.

Pursuant to the foregoing provisions of the Trust Agreement and Pension Plan, officers and business agents of the Carpenters Union have had pension contributions made to the Pension Plan on their behalf since 1965. Prior to June 1, 1975, however, local unions and district councils were not required to contribute to the Pension Trust Fund on behalf of their office clerical employees.

In 1974, following an audit, the Internal Revenue Service advised the Trustees that contributions to the Pension Plan by certain local unions and district councils failed to comply with the coverage requirements of the Internal Revenue Code and discriminated in favor of highly compensated officers and business agents and against office clericals employed by the Union.

As a result of this warning from the IRS, the Trustees considered amending the Pension Plan to require the inclusion of clerical employees of any local union or district council that made contributions for its officers and nonclerical employees. The Trustees were advised by their attorneys that clerical employees should be included because the IRS report suggested that the disparity between retirement benefits received by the union clericals and the benefits received by the union officers and business agents could affect the tax-exempt status of the pension fund. The Trustees were informed by their financial consultants and actuaries that the financial impact of including the clerical employees of the unions in the Pension Plan was minimal and that such inclusion would not result in placing a burden on the retirement benefits payable to members of the Carpenters Union.[1]

After several months of discussion, the Trustees adopted Amendment 13 and implementing regulations on August 26, 1975, the effect of which was to require the union employers who desired to continue participating in the plan to make contributions for all full-time employees, including the clerical employees as well as the union officials and business agents. The "contribution date" for the clerical employees was established as June 1, 1975. Earlier contribution dates had been previously established for other employees covered by the Pension Plan. The significance of the "contribution date" under the plan is that employers were required to contribute for hours worked by their employees after that date. The covered employee received what was defined as "future service" credit for periods of employment after the contribution date and also received "past service" credit for periods of employment with the participating employers before the contribution date.[2] The clerical workers were thus entitled to "past service" credit for periods of employment with the Union prior to June 1, 1975.[3]

A newsletter was sent by the Trustees to all of the local unions, district councils and the State Council of Carpenters, advising

1. There were between 70 to 80 clerical employees employed by the union that would potentially be entitled to benefits under the amendment. There were between 40,000 to 50,000 carpenters working under collective bargaining agreements who were covered by the plan and approximately 5000 employers who contributed to it.

2. "Past service" credit was also given under the terms of the plan for certain military service and time spent as a prisoner of war. "Future service" credit was also given for certain periods when the employee was not actually working for a participating employer due to service in armed forces and periods of disabili-

ty during which workman's compensation benefits were paid.

3. The major significance of the distinction between "past service" credit and "future service" credit is that in order to qualify for normal or early retirement the employee was required to have 15 years of combined service credit, either "past" or "future" or have only 10 years of "future service" credit. However, for disability retirement, such as Brug applied for, no such distinction was made, and only 10 years of service whether "past" or "future" was required.

them that if they wished to contribute to the Pension Plan for any of their employees, they would be required to contribute for all full-time employees.

Between September 1975 and January 1976, five clerical employees applied for, and were granted, pensions pursuant to Amendment 13. In November, 1975, Brug, a clerical employee of Local No. 22, who was suffering from health problems, contacted the Pension Services Department of the Union and inquired about her eligibility for an early retirement pension. Local No. 22 had made contributions for all its employees, including clerical employees, as required by Amendment 13. Michael Pierce, the Supervisor of the Pension Services Department, informed Brug that at age 63 she was not eligible for normal retirement and that her 12 years and 7 months of past service was not sufficient to establish eligibility for an early retirement pension. However, she was told that because of her health problems she could qualify for a disability retirement pension if she were able to qualify for Social Security disability benefits.[4]

Brug made the application with the Social Security Administration and in February, 1975 was informed that she had been awarded the Social Security disability benefits. She then applied for a disability retirement pension. Brug's application was reviewed by the Pension Services Department, which determined that she satisfied all of the eligibility criteria. The Pension Services Department then forwarded Brug's application to the Trustees' Pension Approval Committee (the "Committee") with a recommendation that the application be approved. Ordinarily, the Committee follows the recommendation of the Pension Services Department in voting to approve or reject pension applications. The minutes of the Committee meeting are subsequently presented to the full Board of Trustees for their adoption. Accordingly, Pierce informed Brug that the approval of her application was automatic.

Brug's application came before the Committee on March 16, 1976. Instead of automatically approving the application however, the Committee, aware of some recent complaints from carpenters about the granting of pension benefits to the clerical employees of the unions, deferred consideration of Brug's request until the full Board of Trustees had had a chance to reconsider the propriety of Amendment 13. The Board of Trustees called a special meeting on March 23, 1976 and voted to rescind the amendment, to accept no further contributions to the pension fund on behalf of the unions' clerical employees, and to refund all contributions that had already been made on their behalf. The Committee then reconvened and voted to deny Brug's application.

II

STANDARD OF REVIEW

The Trustees' actions in administering the pension fund are subject to the fiduciary standard set forth in ERISA. Section 404(a)(1) of ERISA provides, in part, that:

a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter....

29 U.S.C. § 1104(a)(1).

This court has held that under ERISA and under the Labor-Management Relations Act the trustees' decision may be reversed only when it is arbitrary or capricious. *Gordon v. ILWV–PMA Benefit Funds*, 616 F.2d 433, 438 (9th Cir. 1980); *Rehmar v. Smith*, 555 F.2d 1362, 1371 (9th Cir. 1976); *Danti v. Lewis*, 312 F.2d 345, 348 (D.C.Cir.1962). In *Rehmar* we stated:

4. Article III, Section 9 of the Pension Plan provided that "the Board shall accept as sole proof of total disability a determination by the Social Security Administration that the Employee is entitled to a Social Security Disability Benefit in connection with his Old-Age, Survivors and Disability Insurance coverage.

Where ... the instrument defining the fiduciaries' duties gives them broad discretion, as is generally the case with welfare and pension trusts, the courts limit their review and intervene in the fiduciaries' decisions only where "they have acted arbitrarily or capriciously towards one of the persons to whom their trust obligations run."

555 F.2d at 1371, *quoting Kosty v. Lewis,* 319 F.2d 744, 747 (D.C.Cir.1963), *cert. denied,* 375 U.S. 964, 84 S.Ct. 482, 11 L.Ed.2d 414 (1964). The critical inquiry, then, is whether the denial of Brug's pension application due to the rescission of Amendment 13 and the implementing regulations was an arbitrary or capricious action.

### III

### DISCUSSION

The district court, in concluding that the Trustees did not act arbitrarily or capriciously, stated:

If the defendant Fund had the power to rescind Amendment Thirteen, then plaintiff's claim must fail as any pension she might receive had to be approved by the Board of Trustees. While Mr. Pierce's office has approved the plaintiff's application, it did so acting under the provisions of Amendment Thirteen. Once that Amendment was rescinded there was no basis for his office to approve such an application. Furthermore, that approval did not vest any right in the plaintiff. Only the Board of Trustees have that power and it was never exercised in plaintiff's behalf.

There is no question that Brug met the eligibility requirements for the disability pension at the time she retired and applied

5. Article III, Section 7 of the Pension Plan provided:

Disability Pension. An Employee shall be entitled to retire on a Disability Pension if he is totally disabled at a time when:
a. He has not yet attained age 65;
b. he has at least 10 years of Pension Credit (Past and Future Service Credit) without a break in employment as defined in Article IV, Section 6; and

for the pension.[5] There is also no doubt that under Amendment 13 and the implementing regulations she was an employee who was covered by the Pension Plan. It is clear that Brug's disability had been established, that she retired, and that she filed her pension application all before the date that Amendment 13 and the implementing regulations were rescinded. The question, therefore, is whether the Trustees, during the pendency of Brug's application, could retroactively amend the plan so as to disqualify her as a beneficiary.

This process of pulling the rug out from under Brug violates the terms of the Pension Plan itself. Article X, Section 1 of the Pension Plan's Rules and Regulations provides:

Amendment. The Board of Trustees may amend or modify this Pension Plan at any time or from time to time in accordance with the Trust Agreement, *except that no amendment or modification may reduce any benefits payable to Employees who retired prior to such amendment or modification* so long as funds are available for payment of such benefits.... (emphasis added.)

The appellee does not contend that Amendment 13 violated ERISA or any other statutory requirement or federal regulation. Appellee asserts that the Amendment to the plan was unlawful because it was in violation of the basic Trust Agreement, for the reason that it had never been intended by the Trustors that the clerical employees of the unions would be covered. This argument is not persuasive in light of the Trust Agreement provision in Article I, Section 4, which defines the employees who are covered, stating:

c. he has actually worked in Covered Employment for at least 350 hours in the 12-month period following his Contribution Date, or for 700 hours after his Contribution Date.

Brug was 63 years of age, had over 10 years of pension credit and had worked in covered employment at least 350 hours in the 12-month period following the contribution date. She had established her total disability by obtaining Social Security disability benefits.

The term "Employee shall also include employees of Local Unions and District Councils, and employees of labor councils of other labor organizations with which a Local Union or District Council is affiliated, on whose behalf contributions are made to the Pension Fund pursuant to regulations adopted by the Board of Trustees; provided the inclusion of any of said employees is not a violation of any existing law or regulation."

The provision is clear and unambiguous. There is no contention that the inclusion of the clerical employees violated any existing law or regulation, and thus the action of the Trustees in providing for the inclusion of clerical employees, for whom contributions were to be made by the employing union organization, was well within their discretion.

Following the adoption of Amendment 13 and the implementing regulations, there had been complaints and threats of suit by carpenters who contended that the action was unfair because it allowed pensions for the clerical workers to be computed on the basis of service rendered prior to the date the contributions for service were made by the employing union organization. However, this was a discretionary matter for the Trustees. The Pension Plan provided for pension credit for service before the designated contribution date for other employees as well. It is the nature of a pension plan such as this one to provide benefits for periods of service for which no contributions are specifically made or required. This plan provided such benefits, including death benefits, disability pensions, credit for past service, credit for service in the armed forces, and partial pensions based on credited service with other related plans. This type of benefit has to be based upon actuarial probabilities, not specific contributions for specific employees.

The Trustees had the discretionary authority under the terms of the Trust Agreement to include the clerical employees. They also had the authority to terminate the clerical employees' inclusion in the plan.[6] However, the Trustees did not have the discretionary authority to apply that termination so as to preclude Brug's eligibility for pension benefits that had vested in the meantime.

In *Danti v. Lewis*, 312 F.2d 345 (D.C.Cir. 1962), and *Kiser v. Huge*, 517 F.2d 1237 (D.C.Cir.1974), the District of Columbia Circuit considered a question similar to the one presented here. In *Danti v. Lewis*, the employee met all eligibility requirements for a pension at the time he filed his application. The trustees, however, denied the application because it failed to comply with an amendment that had been adopted after the application was filed. The court found that the trustees' action was arbitrary and capricious, concluding that the application should have been reviewed under the eligibility standards in effect at the time it was submitted by the employee.

In *Kiser v. Huge*, former mine workers brought a class action against the trustees of the United Mine Workers Retirement Fund, alleging that the denial of their pension benefits on the basis of a resolution passed after they submitted applications was arbitrary and capricious. The court agreed, stating that *"the pension benefits of members of the plaintiff class began accruing on the dates when their applications should have been approved by the Trustees...."* 517 F.2d at 1247 (emphasis in original). Relying on *Danti*, the court concluded that "pension rights vest at the date a retired miner applies for benefits, if the applicant meets all eligibility criteria then in effect." *Id.*

The appellee argues that *Danti* and *Kiser* are distinguishable because they involved retroactive application of eligibility rules, whereas this case was a retroactive exclusion of beneficiaries from the plan. In our view, this is a distinction without a difference. The rule stated in *Danti* and *Kiser* is equally applicable whether the trustees use newly-adopted eligibility criteria as the basis for denying benefits or accomplish the

---

**6.** Any question whether the exclusion of the clerical employees of the union might jeopardize the qualification of the plan under ERISA, as suggested in the IRS audit, is not before us.

same goal by simply eliminating a class of employees from the list of plan beneficiaries.

This court, in a different but analogous situation held in *Burroughs v. Board of Trustees of Pension Trust, etc.*, 542 F.2d 1128 (9th Cir. 1976), *cert. denied*, 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977), that the trustees had acted arbitrarily and capriciously in retroactively applying a break-in-employment rule to the plaintiff who had no notice of its existence and, thus, no reasonable opportunity to protect himself from its impact during the years to which it was retroactively applied. The court stated that in determining whether trustees act arbitrarily and capriciously the question is "not ... *what* the eligibility requirements for the pension are, but rather ... *how* the changes in qualifications are made." 542 F.2d at 1131. Thus, the arbitrary and capricious action in *Burroughs* was not the adoption of the break-in-employment rule. It was, rather, the application of that rule to an employee who, in applying for a pension, relied upon his eligibility under plan provisions that he thought were still in effect.

Under the Pension Plan in existence at the time of her disability retirement, Brug met all of the eligibility requirements. The fact that the Trustees did not formally pass upon the matter until after Amendment 13 was rescinded can have no effect upon her entitlement.

The judgment of the district court is REMANDED for entry of judgment consistent with this opinion.

* The panel finds this case appropriate for submission without argument pursuant to 28 U.S.