Sam OSTER, Plaintiff–Appellant,

v.

BARCO OF CALIFORNIA EMPLOY-
EES' RETIREMENT PLAN; Managing
Committee of the Barco of California
Employees' Retirement Plan; Barco of
California; Michael Ferguson, Defen-
dants–Appellees.

No. 86–5696.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 9, 1987.

Decided Oct. 11, 1988.

As Amended on Denial of Rehearing
March 15, 1989.

Ronald Dean, Pacific Palisades, Cal., for plaintiff-appellant.

Jay R. Ziegler, Buchalter, Nemer, Fields, Chrystie & Younger, Los Angeles, Cal., for defendants-appellees.

Before NELSON, HALL and THOMPSON, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Sam Oster, a former employee of Barco of California (Barco), brought this action against Barco, the Barco Employees' Retirement Plan (the Plan), and the Barco Plan's Managing Committee (the Committee), alleging that the Committee's denial of his request for payment of his retirement benefits in a lump sum was arbitrary, capricious, and unreasonable. The district court granted defendants' motion for summary judgment on the grounds that the Committee was exercising its discretion as provided for in the Plan, that the decision not to pay retirement benefits in lump sums was made to make the Plan more financially sound for the benefit of all beneficiaries, and that there was no evidence that the Committee's decision was made in bad faith. Oster timely appeals. We have jurisdiction under 28 U.S.C. § 1291; we affirm.

I

Oster was employed by Barco from January 2, 1972, to February 1, 1985. During that time, Barco maintained the Plan for the benefit of its employees, including Oster. The Plan, which is a defined benefit plan subject to the provisions of the Employee Retirement Income Security Act (ERISA) of 1974, Pub.L. 93–406, 88 Stat. 832 (codified as amended in scattered sections of 26 U.S.C., 29 U.S.C., 31 U.S.C., and 42 U.S.C.), provides for an annuity to be paid to the participant or his beneficiary upon the participant's death, disability, retirement, or termination of employment. When Oster terminated his employment with Barco on February 1, 1985, he was 90% vested in the Plan. The present value of Oster's vested benefit in the Plan was $133,320.47.

Both the Plan itself and the summary plan description (copies of which were distributed to all plan participants) provided that the normal form of retirement benefit under the Plan was an annuity for life or 120 months. These monthly payments were to commence at age 65.[1] However, under the "optional benefit" request provision of the Plan, an employee could request a lump-sum distribution of the actuarial equivalent of his accumulated benefit. Although the Plan, the summary plan description, and the pension application form filed by Oster described the optional payment forms available, these three doc-

---

1. In February of 1985, Oster was not quite 57 years old.

uments also pointed out that the final determination as to the manner in which benefits are distributed is within the sole discretion of the Committee and that no employee's preference is binding on the Committee.

On January 23, 1985, Oster applied to the Committee for a lump-sum distribution of his accumulated pension benefits. In Oster's signed application, the following provision appears:

> I understand that this request [for a lump-sum distribution] is not binding on the Committee and that the Committee has the right to select any method of settlement it deems in the best interests of the recipients and the Fund.

In spite of the fact that virtually every other request for a lump-sum distribution of benefits had been granted by the Committee in the 22–year history of the Plan, the Committee denied Oster's request.[2] On January 29, 1985, approximately two months after Oster had tendered his resignation, the Committee decided that as a matter of general policy no lump-sum distributions exceeding $3,500 would be made to any participant of the Plan terminating his employment after January 2, 1985. The Committee claims the policy change was based on the recommendation of the Plan's actuary that the routine lump-sum distribution policy should be so modified and on the committee's decision to make the plan more of a retirement program rather than a severance pay program.

## II

We must generally sustain a decision of an ERISA plan's trustee unless it was "arbitrary or capricious."[3] *Fielding v. International Harvester Co.,* 815 F.2d 1254, 1256 (9th Cir.1987). In some ERISA cases where the employer administers its own plan, however, we have held that "[l]ess deference should be given to the trustee's decision." *See Jung v. FMC Corp.,* 755 F.2d 708, 712 (9th Cir.1985). Oster relies on *Jung* and contends that less deference should be applied to the Committee's decision in this case. We only apply this "lesser deference" standard, however, if the Committee's decision implicates a serious conflict between the interests of the employer and the beneficiaries. *See id.* at 711–12; cf. *Bruch v. Firestone Tire & Rubber Co.,* 828 F.2d 134 (3rd Cir.1987), *cert. granted,* — U.S. —, 108 S.Ct. 1288, 99 L.Ed.2d 498 (1988) (applying de novo review where administrator's interests are adverse to claimant's). This is not such a case: The conflict in this case is between past and future beneficiaries. Here, the Committee was not choosing between Oster and Barco, but rather, between Oster and future employees covered by the Plan. The decision was based not only on the financial viability of the Plan, but was intended to make the Plan more of a retirement vehicle for the employees by awarding them lifetime annuities.

That the change in policy also benefited Barco does not make the policy change the type of action which raises doubts as to the trustees' total loyalty to all plan participants. *See Morse v. Stanley,* 732 F.2d 1139, 1144–47 (2d Cir.1984). To some extent, a potential conflict of interest between the trustees and the company inheres in defined benefit plans such as Barco's. Any action that enhances the financial viability of the Plan tends to reduce the potential contributions of the company. Construing the evidence in the light most favorable to Oster, he has shown no more than the Committee's awareness of this inherent potential conflict. The Committee took steps to improve the Plan's financial soundness. The evidence Oster points to might support the inference that the Committee was aware that in taking these steps it might also reduce the amounts Barco

---

**2.** In 1981 the managing committee was comprised entirely of Barco executives, while in 1985, it included rank and file employees. Oster had been a member of the Committee from March, 1983, to November, 1984.

**3.** This case comes as an appeal from the district court's grant of summary judgement in favor of Barco. We review de novo a grant of summary judgement. *Ferguson v. Greater Pocatello Chamber of Commerce,* 848 F.2d 976, 979 (9th Cir.1988). The evidence is construed in the light most favorable to Oster.

would ultimately have to contribute. Such evidence is insufficient to create a genuine issue of material fact as to the Committee's loyalty to the Plan's beneficiaries. A contrary conclusion would mean that we must always consider trustees of a defined benefit plan as subject to a conflict of interest, which we are unwilling to do.

Moreover, we note that this is not a case in which the complaining beneficiary is suffering a reduction in benefits. Whether Oster received his benefits in the form of an annuity or a lump-sum distribution, the amount paid to him would be actuarially equivalent. All Oster protests is the form in which he will receive his benefits. It is true that disbursement of a large percentage of the Plan's assets would have an adverse effect on the Plan's stability and, as a result, might tend to increase Barco's potential contributions. Whether Oster receives his benefits in the form of a lump-sum distribution upon separation or in the form of an annuity with payments commencing at age 65, however, he will receive actuarial equivalent amounts. That the Committee's policy change effected only a delay and not a reduction in Oster's benefits buttresses our conclusion that its decision was not tainted by a serious conflict between Barco and the beneficiaries.

### III

Applying the arbitrary and capricious standard of review, "affirmative participation" in the Committee's decisionmaking process is limited to decisions that are " 'so patently arbitrary and unreasonable as to lack foundation in factual basis and/or authority in governing case or statute law.' " *Elser v. I.A.M. Nat'l Pension Fund,* 684 F.2d 648, 655–56 (9th Cir.1982) (quoting *Roark v. Lewis,* 401 F.2d 425, 429 (D.C.Cir. 1968)), *cert. denied,* 464 U.S. 813, 104 S.Ct. 67, 78 L.Ed.2d 82 (1983). We will not substitute our judgment for the judgment of the Committee unless " 'the actions of the [Committee] are not grounded on *any* reasonable basis.' " *Elser,* 684 F.2d at 656 (emphasis added) (quoting *Ponce v. Construction Laborers Pension Trust,* 628 F.2d 537, 542 (9th Cir.1980)). "A decision

is not arbitrary or capricious if it is based on a reasonable interpretation of the plans terms and was made in good faith." *Johnson v. District 2 Marine Engineers Beneficial Association–Associated Maritime Officers, Medical Plan,* 857 F.2d 514, 516 (9th Cir.1988) (per curiam).

■ However, since the Committee's decision to deny Oster a benefit that the Committee had routinely granted to others appears to be arbitrary and capricious on its face, the Committee must advance some reason for its decision if it is to survive review under the arbitrary and capricious standard. *See Hurn v. Retirement Fund Trust of the Plumbing, Heating & Piping Industry of So. Cal.,* 703 F.2d 386, 390 (9th Cir.1983). The critical inquiry in this case therefore is whether the Committee's denial of Oster's request for a lump-sum distribution of his accumulated benefits was based on a reasonable rationale or whether their decision was unreasonable, that is, arbitrary and capricious. *See Brug v. Pension Plan of the Carpenters Pension Trust Fund,* 669 F.2d 570, 573–74 (9th Cir.), *cert. denied,* 459 U.S. 861, 103 S.Ct. 135, 74 L.Ed.2d 116 (1982).

### IV

ERISA does not mandate any specific mode of payment for retirement benefits. *Pompano v. Michael Schiavone & Sons, Inc.,* 680 F.2d 911, 914 (2d Cir.1982). The trustees' actions in administering a pension fund are nevertheless subject to certain fiduciary standards. ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1); *See Jung v. FMC Corp.,* 755 F.2d 708, 710 (9th Cir.1985); *Brug,* 669 F.2d at 573. "At the same time, however, they have a duty to keep the fund financially stable. The purpose of a fund is to provide benefits to as many intended beneficiaries as is economically possible while protecting the financial stability of the fund." *Elser v. I.A.M. National Pension Fund,* 684 F.2d 648, 656 (9th Cir. 1982).

The Committee claims that it based its decision to deny Oster's request for a lump-sum distribution solely on its belief that it was in the best interests of the Plan and all of its participants to do so. In reaching its decision, the Committee relied on the advice of the Plan's actuary who stated that the former policy of routinely granting requests for lump-sum payments should be "phased out." If this decision was a reasonable one, we will not substitute our judgment for that of the Plan's trustees.

The Committee's decision to modify its policy appears to be reasonable. Under the Barco Plan, the Committee is not required to make accelerated distributions to employees who request that form of benefit. Instead, Article IV of the Plan states that a Plan participant is merely entitled to an annuity for life or 120 months, whichever is longer, upon reaching the age of 65. This is the sole form of benefit to which Oster was entitled under the terms of the Plan. Any other form of benefit was wholly within the discretion of the Committee. The Plan does not prohibit the Committee from relying on actuarial advice in exercising its discretion.

Oster claims that, in spite of the Committee's articulated rationale for denying him a lump-sum distribution, the Committee's decision was arbitrary and capricious for three reasons. First, Oster contends that since the Committee had granted all prior applicants a lump-sum distribution, the Committee abused its discretion in denying his application. A mere finding that *prior* requests had been granted, however, would not by itself sustain a ruling that the Committee acted in an arbitrary and capricious manner. *See Morse*, 732 F.2d at 1144; *Denton v. First Nat'l Bank*, 765 F.2d 1295, 1300 (5th Cir.1985); *Fine v. Semet*, 699 F.2d 1091, 1093–94 (11th Cir.1983).

In *Morse*, three employees argued that because their plan's trustees had routinely granted lump-sum distribution requests, they were absolutely required to grant all such requests. The Second Circuit disagreed. As that court stated, "whether the Trustees had in the past granted acceleration to employees who requested it does not mean that they had donned a discretionary straitjacket which held them bound to grant acceleration in all cases as a matter of course." *Morse*, 732 F.2d at 1144. Thus, in spite of their prior conduct, the trustees did not act in an arbitrary or capricious manner in denying the employees' requests where, as here, "the Plan gave them broad discretion to evaluate requests for accelerated distribution on a case by case basis." *Id.*

On almost identical facts, the Fifth Circuit held in *Denton* that a past history of affording benefits in a certain manner was insufficient to support a judgment to compel the Committee to grant a plaintiff's request for such a lump-sum distribution. *Denton*, 765 F.2d at 1300. And, as the Eleventh Circuit pointed out in *Fine*, a case which presented facts essentially the same as Oster's case does, the Committee's prior record of granting requests for lump-sum payments does

> not mandate a conclusion that a future ... Committee could not exercise the discretion vested in it by the plan[ ] to refuse a request for a lump sum payment if it determined that granting the request would be fiscally unwise. To hold otherwise would impair the flexibility necessary for proper financial management of such plans, a goal of Congress in holding ERISA fiduciaries to the "prudent man" standard.

*Fine*, 699 F.2d at 1094 (citations omitted). We hold that the Committee's prior record of routinely granting requests for lump-sum distributions is insufficient to establish that the Committee acted arbitrarily or capriciously in denying Oster's request.

Second, Oster claims that the actuarial advice on which the Committee relied was insufficient to justify a modification of the Committee's lump-sum distribution policy. Oster contends that a cash distribution of his benefits posed no threat to the financial integrity or stability of the Plan, even though the amount of his benefits represented more than 17% of the Plan's total assets. In essence, Oster is asking us to second-guess the Committee's judgment in

accepting the actuary's recommendation to modify the lump-sum distribution policy.

We will not second-guess the Committee unless its actions were unreasonable. The district court relied on the declaration of Michael F. Ferguson, a member of the Committee and a defendant in this action. Ferguson explained that the Committee relied on the advice of the Plan's actuary. The Committee's decision was based on two grounds: Granting annuities with payments to begin at the normal retirement age of 65 would make the Plan (1) more financially stable on a long term basis, and (2) a more effective retirement program (rather than a severance plan) for all Barco employees.[4]

The critical issue here is whether the Committee's interpretation of the actuary's advice was unreasonable. Reasonable persons could have interpreted the advice of the actuary to require a modification of the lump-sum distribution policy in order to safeguard the Plan. We therefore hold that the Committee's reliance on the actuary's determinations was not unreasonable and justified the modification of the lump-sum distribution policy.

Third, Oster contends that it was fundamentally unfair for the Committee to retroactively apply the new lump-sum distribution policy to him without giving him notice. Oster argues that had he terminated his employment in December of 1984, as he originally planned, the Committee's policy change would not have applied to him. However, as Oster admits, the Committee at all times had the discretion to deny any lump-sum benefit request. This discretion was granted to the Committee in the Plan itself, and Oster had a longstanding notice of the Plan provisions which granted to the Committee the exclusive discretion to determine the form of the benefit which a terminating participant would receive.

Moreover, whether the Committee adopted a new policy, as it did, or merely voted to deny Oster's request, as it could have done, the decision remained solely within its discretion. We hold that absent some evidence of actual bias against the claimant, the Committee's application of a policy adopted for the apparent benefit of all future claimants does not establish that the Committee acted arbitrarily or capriciously.

## V

■ We next address whether the Committee's change in the Plan's lump-sum distribution policy constituted a plan amendment in violation of section 301 of the Retirement Equity Act (REA) of 1984 (section 301). *See* 29 U.S.C. § 1054(g)(2)(B) (1984). Oster claims that the Committee's policy change regarding lump-sum benefit distributions rises to the level of a plan amendment. Barco disagrees.[5] We have not previously undertaken to establish an all-encompassing standard defining which acts constitute plan amendments, but decisions of the District of Columbia and Seventh Circuits provide useful guidance.[6] We

---

4. *Cf.* Section V *infra.*

5. Barco also argues that section 301 is not applicable to the plan year at issue because the REA applies only to plan years beginning after 1984. *See* REA § 302(a) (*see* 29 U.S.C. § 1001 note § 302(a)). Barco's plan year began in June of 1984. Oster rebuts this claim by asserting that the Committee's decision fits within the "plan amendment" exception to the otherwise applicable effective date. *See* REA § 302(d)(1) (*see* 29 U.S.C. § 1001 note § 302(d)(1)). Because we decide that the Committee's decision was not a plan amendment, we need not address Oster's claim. *See Dooley v. American Airlines, Inc.,* 797 F.2d 1447, 1451 (7th Cir.1986).

6. In *Fentron Industries v. Nat. Shopmen Pension Fund,* 674 F.2d 1300 (9th Cir.1982), we held that the plan's cancellation of past service credits was a plan amendment changing the participants' vesting schedule under 29 U.S.C. § 1053(c)(1)(B). Oster does not argue that the trustees improperly amended the plan's vesting schedule. Rather, he contends that the trustees' refusal to make a lump-sum distribution was itself a plan amendment decreasing accrued benefits in violation of section 1054(g)(2)(B). Nonetheless, in a petition for rehearing, he contends that *Fentron* controls this case, and that we improperly relied upon the D.C. Circuit's decision in *Stewart v. National Shopmen Pension Fund,* 730 F.2d 1552 (D.C.Cir.1984), which involved the very same plan and the very same amendment at issue in *Fentron.* The *Stewart* court, however, found that the plan's cancellation of past service credits did not constitute a plan amendment.

adopt the reasoning of these decisions and hold that no "plan amendment" occurred in this case.

In *Stewart v. National Shopmen Pension Fund*, 730 F.2d 1552 (D.C.Cir.), *cert. denied*, 469 U.S. 834, 105 S.Ct. 127, 83 L.Ed.2d 68 (1984), the D.C.Circuit held that in the context of the ERISA provisions governing plan amendments "the word 'amendment' is used as a word of limitation." *Id.* at 1561 ("Congress did *not* state that any change would trigger the ... provisions; it stated that any change *by amendment* would do so.") (emphasis in original). In *Dooley v. American Airlines*, 797 F.2d 1447 (7th Cir.1986), *cert. denied*, 479 U.S. 1032, 107 S.Ct. 879 & 1292, 93 L.Ed.2d 833 (1987), the Seventh Circuit adopted the "commonsensical rule of law" enunciated in *Stewart. Id.* at 1452. As the *Dooley* court stated, "we are unwilling to contort the plain meaning of 'amendment' so that it includes the valid exercise of a provision which was already firmly ensconced in the pension document." *Id.* (holding that plan fiduciaries who exercised authority to change actuarial assumptions from "time to time" did not violate ERISA section 1054(g), where a provision allowing

modification of actuarial assumptions was in the pension plan).

In Oster's case, as in *Stewart* and *Dooley,* there was no "plan amendment" in the technical sense. The Committee made no actual change in the provisions of the Plan; it merely adopted a policy which applied to a provision which was already part of the Plan. In denying Oster's application for a lump-sum distribution, the Committee followed this policy and thereby exercised the discretion granted to them by the Plan. *Cf. Dooley,* 797 F.2d at 1452. To curtail that discretion "would impair the flexibility necessary for proper financial management of [retirement] plans." *Fine,* 699 F.2d at 1094. Therefore, we hold that the modification of the lump-sum distribution policy did not rise to the level of a plan amendment in violation of section 301.

## VI

■ Oster asks us to award him attorney's fees on appeal pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1). We have held that section 502(g)(1) allows for the recovery of attorney's fees and costs incurred in an appeal regardless of the outcome. *See, e.g., Sokol v. Bernstein,*

---

There is no tension between our reliance upon the *Stewart* decision's rationale that Congress used the word amendment as a term of limitation, and the *Stewart* court's holding distinguishing our decision in *Fentron.* The *Fentron* court did not hold that amendments to an ERISA plan are to be inferred willy nilly or that Congress intended the term "amendment" to be construed expansively. Furthermore, even assuming that the holdings of the *Stewart* and *Fentron* decisions are irreconcilable, the holdings of these decisions have no bearing whatsoever on the issue before us. Those cases involved the cancellation of past service credits, not the termination of lump-sum payments. In short, we cite the *Stewart* decision solely for its excellent overview of the relationship between ERISA and the role of plan amendments—a task simply not undertaken in our *Fentron* decision.

The most that can be said of any discrepancy between the *Fentron* and *Stewart* decisions is that the former adopted a broader notion of what constitutes a plan amendment, because it found an amendment where the *Stewart* court did not. But the *Stewart* court specifically disavowed using a more miserly standard for defining plan amendments than the *Fentron* court.

The *Fentron* court held that the trustees amended the vesting schedule where the elimi-

nation of past service credits precluded all employees from qualifying for pension vesting. 674 F.2d at 1306. In other words, without the additional past service credits, the employees lost their vested right to receive a pension. The *Stewart* court distinguished the *Fentron* decision on this basis, holding that the elimination of past service credits did not completely divest the employees of their right to receive a pension, but only reduced accrued benefits. 730 F.2d at 1556.

We do not necessarily accept the *Stewart* court's holding that there is no vesting schedule amendment where the elimination of past service credits merely reduces, rather than eliminates, accrued benefits. *Cf.* 29 U.S.C. § 1054(g)(2)(A) ("eliminating *or reducing* an early retirement benefit") (emphasis added). But by carefully distinguishing our *Fentron* decision, the *Stewart* court did not purport to apply a different standard for defining plan amendments. In any event, the *Stewart* court's admonition that not all changes to the plan constitute amendments is well-taken. Here, the trustees' decision to eliminate lump-sum payments did not even reduce pension benefits. No possible reading of *Fentron* undermines our conclusion that the trustees did not amend the plan by eliminating lump-sum distributions.

812 F.2d 559, 561 (9th Cir.1987). Therefore, even though we hold against Oster on all of his other claims, we now address whether he is entitled to attorney's fees on appeal.

We first set out the relevant criteria in *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446 (9th Cir.1980). The criteria include: "(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions." *Id.* at 453 (citations omitted).

Applying these factors, we conclude that Oster should not be awarded attorney's fees on appeal. The first factor weighs against awarding Oster fees. Oster did not allege any bad faith on the part of Barco either at trial or on appeal, and the district court determined that the defendants did not act in bad faith. The second factor does not weigh for or against awarding fees to Oster. While the Plan *may* find it difficult to pay attorney's fees without injuring the interests of other beneficiaries of the Plan, the Committee has provided no direct evidence of any such hardship. The third factor weighs against awarding Oster fees on appeal. We see no need to deter the Plan's trustees from exercising their discretion in situations such as this case presents. The fourth factor also weighs against awarding fees. In bringing this appeal, Oster was not seeking to benefit all participants. He was attempting to achieve a one-time benefit for himself, regardless of the impact such a payment might have on the future beneficiaries of the Plan. Finally, the fifth factor reinforces the denial of fees since Oster's arguments were without merit. Taken together, four of the five *Hummell* factors dictate that Oster should not be awarded attorney's fees on appeal. We therefore deny his request for fees on appeal.

## VII

The district court properly granted the defendants' motion for summary judgment. Its judgment therefore is AFFIRMED.