46 F.3d 1145
 Pens. Plan Guide P 23908W
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 
 Shirley STEELE, Plaintiff-Appellant,
v.
RETIREMENT PLAN OF LORAL AEROSPACE CORPORATION, formerly the
Salaried Employees' Retirement Plan of Aerospace
and Communications Corporation,
Defendant-Appellee.
 No. 93-15809.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted: Dec. 13, 1994.
Decided: Jan. 25, 1995.
 Before: WALLACE, Chief Circuit Judge, PREGERSON and BEEZER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Shirley Steele appeals the district court's summary judgment in favor of the Retirement Plan of Loral Aerospace Corporation. The district court held that the Plan Administrator did not abuse its discretion in violation of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Secs. 1001-1461, by denying Steele's claim for deferred special early retirement ("DSER") benefits. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We AFFIRM in part and REMAND.
 
 I. BACKGROUND
 
 3
 Shirley Steele began her employment at Philco, a predecessor in interest to Ford Aerospace, on November 17, 1959.[1] On January 17, 1989, Steele went on an approved medical leave of absence from Ford Aerospace because of work-related emotional problems.
 
 
 4
 Until April 23, 1989, Steele received her full salary through a combination of sick leave and short-term disability. From April 23, 1989 through August 23, 1989, Steele continued to receive short-term disability benefits at 50% pay. In addition, on or about July 1, 1989, Steele received accrued vacation pay approximately equal to 2 1/2 months' salary. After August 23, 1989, Steele received only long-term disability benefits of 60% of her salary, less credits for money she received from worker's compensation.
 
 
 5
 Under Ford Aerospace's personnel policies, medical leave was available for up to 12 months, with extensions available under special circumstances. At the time that Steele began her leave, her treating physician estimated that Steele would be not be able to return to work at least until January 15, 1990. Steele's doctor later revised his prognosis, and told Ford Aerospace that she would not be able to return to work until January 15, 1991. Ford Aerospace then extended Steele's medical leave of absence to eighteen months, and on July 10, 1990 offered to extend it an additional six months.
 
 
 6
 Steele's psychologist advised her, however, that a return to work would be detrimental to her psychological health, so she declined Ford Aerospace's offer to extend her medical leave. Instead, Steele resigned on July 3, 1990. At the time she resigned, Steele was 50 years old.
 
 
 7
 In response to her resignation letter, Ford Aerospace wrote to Steele and reminded her that the company had offered to extend medical leave for another six months. In the letter, the company assured Steele that it would place her in a suitable position upon her return. The letter also specifically warned Steele to reconsider her resignation in light of its effect on her retirement benefits. In response, Steele wrote back to Ford Aerospace and confirmed that she resigned "regardless of the eventual answers to my questions on the status of my retirement."
 
 
 8
 Steele claims that the November 1989 Summary Plan Description, the most recent plan she received prior to her resignation, was silent as to the Deferred Special Early Retirement. While the company had reduced the eligible age for the DSER benefit to age 50, Steele asserts she was not so notified. Steele therefore retired without applying for the benefit, under the misapprehension that she would not be eligible to receive DSER until age 53.
 
 
 9
 After Steele resigned, she requested additional information from Ford Aerospace about her retirement and related medical benefits. After an exchange of letters and documents between Steele and the Retirement Committee, the Committee determined that Steele qualified for Regular Early Retirement. The Committee, however, denied Steele's request for DSER. The Committee interpreted the Plan language to afford DSER benefits only to active employees terminated by the company who elect DSER benefits prior to termination.
 
 
 10
 In a separate issue, the Committee also determined that Steele was not entitled to "contributory service" for the portion of her medical leave which followed the expiration of her sick leave. The Committee told Steele that employee contributions to the retirement plan could only be made when the employee is being paid either salary or sick pay.
 
 
 11
 Steele contested the Retirement Committee's findings by filing suit in federal district court. Both Steele and the Plan then filed motions for summary judgment, and the court ruled for the Plan.
 
 II. ANALYSIS
 
 12
 On appeal, Steele claims that the district court erred when it found that the Plan Administrator did not abuse its discretion in denying her claim for DSER. Steele also contests the Committee's ruling that she is not entitled to contributory service for the time that she was on medical leave.
 
 A. Standard of Review
 
 13
 Where an ERISA plan vests the plan administrator with discretionary authority to determine eligibility for benefits, a district court may review the administrator's determinations only for an abuse of discretion. Taft v. Equitable Life Assurance Soc'y, 9 F.3d 1469, 1471 (9th Cir. 1993). In this case, Steele concedes that the Plan gives the fiduciary this discretionary authority, but argues that a conflict exists since Loral Aerospace administers its own plan. We agree, however, with the district court's finding that any such conflict does not rise to the level of a "serious conflict" which must exist before we apply a "lesser deference" standard. Oster v. Barco of Cal. Employees' Retirement Plan, 869 F.2d 1215, 1217 (9th Cir. 1988). Therefore we find that the district court properly applied the abuse of discretion test to review the Plan's denial of Steele's request for DSER benefits.
 
 
 14
 This court's review of the district court's application of this deferential standard is de novo. Taft, 9 F.3d at 1471.
 
 B. Denial of the DSER Benefit
 
 15
 Initially, Steele argues that the Plan Administrator's failure to give her notice of the change in eligibility for DSER from age 53 to age 50 prejudiced her. Steele asserts that had she known that she was eligible for DSER, she would have elected the benefit.
 
 
 16
 We do not find Steele's notice argument convincing. First, Steele stated clearly in a letter to Ford Aerospace at the time of her resignation that she did not rely on retirement plan provisions when deciding to resign.
 
 
 17
 Moreover, even if Steele had known that the DSER age requirements had been lowered, she still would not have qualified for DSER benefits. The district court ruled, and we agree, that the Retirement Committee reasonably determined that DSER benefits only apply to employees terminated by the company.
 
 
 18
 The Revised Administrative Standards for the Plan read, in pertinent part:
 
 
 19
 1. Unable to perform assigned duties effectively under one of the following conditions and is age 55 but less than 65 and has completed 10 or more years of creditable service, and employment is being terminated:
 
 
 20
 --Due to physical or mental conditions can no longer perform effectively and cannot be placed in a suitable position. Or, can still perform effectively but continued employment would jeopardize health. Health condition not serious enough for disability retirement. Requires written documentation of job performance and also, if appropriate, medical condition by both personal and Company physician.
 
 
 21
 --As a result of irregular attendance due to chronic illness, disability or substance abuse, normal operations cannot be performed. Requires written documentation of job performance and also, if appropriate, medical condition by both personal and Company physician.
 
 
 22
 --Due to increased work complexity, lacks skill, training, and knowledge to perform effectively and cannot be placed in a suitable position. Requires written documentation of job performance.
 
 
 23
 If terminated between ages 50 and 55 with 10 or more years of creditable service under these circumstances, will be eligible for Special Early Retirement at age 55 (Deferred Special Early Retirement).
 
 
 24
 (Emphasis added).
 
 
 25
 As the district court noted, the language "employment being terminated" does not specify who initiates the termination. Although this language is less than clear, in viewing this passage as a whole it is reasonable to interpret this provision as applying to situations where seasoned employees, through no fault of their own, are terminated by the company before they reach retirement age. We agree with the district court that the Retirement Committee did not abuse its discretion by construing the Plan language in that manner.
 
 
 26
 Because we find no abuse of discretion in the Committee's interpretation of the "employment being terminated" language in the Revised Administrative Standards, we need not reach the Plan's argument that the amended plan, which contains a clearer statement of the criteria for DSER, should govern.[2] Therefore we affirm the district court's ruling that Steele was not eligible for DSER benefits.
 
 
 27
 C. Denial of "Contributory Service"
 
 
 28
 Steele also asserts that she was entitled to "contributory service" for that portion of her medical leave which followed the expiration of her sick leave.[3]
 
 
 29
 In July 1974, Steele elected to participate in the contributory portion of the company's pension plan. Steele alleges that after she began her leave in January 1989, contributions were taken from her sick leave pay but were not taken from her short- or long-term disability pay, or from her vacation pay.
 
 
 30
 The Plan Administrator argues that although there is no rule in the Plan or in the company's personnel policies that expressly addresses whether monies received for medical leave qualify for contributory service, the policy is defensible because of its reasonableness. The Plan Administrator asserts that the Committee has consistently interpreted the written provisions regarding salary and contributory service to only include salary received while working or while continuing to receive salary during sick leave. The logic of this construction, the Plan Administrator argues, is that sick leave payments are thought of as the continuation of regular salary payments during relatively short periods of illness, and are paid via the company's payroll system, while amounts paid under disability are payments which come from the insurance carrier.
 
 
 31
 We find this distinction reasonable as to the disability pay. That distinction, however, does not explain why the Plan did not allow contributory service for Steele's vacation pay (paid via the company's payroll system) that she received after she began her medical leave, especially since the Committee eventually credited her for contributory service for the sick pay she received after she went on medical leave. The district court did not address the issue in its decision. We hesitate, therefore, to rule definitively on Steele's entitlement to contributory service for vacation pay. Thus, though we find that the Retirement Committee did not abuse its discretion in denying contributory service for the disability pay Steele received during her medical leave, we remand to the district court the question of Steele's apparent entitlement to contributory service for her vacation pay. The terms, conditions, and amount, if contributory service is merited, should be fixed by the district court.
 
 D. Attorney's Fees
 
 32
 Both Steele and the Plan Administrator have requested attorney's fees in this case. Under ERISA Sec. 502(g)(1), 29 U.S.C. Sec. 1132(g)(1), the court in its discretion may award reasonable attorney's fees to either party in a benefits claim action.
 
 
 33
 We decline to award attorney's fees to Steele, since she prevailed only on one small portion of her appeal.
 
 
 34
 We further deny attorney's fees to the Plan Administrator. In Tingey v. Pixley-Richards West, Inc., 958 F.2d 908 (9th Cir. 1992), we denied appellate attorney fees to a defendant who had prevailed on appeal. In that case, we applied the five-factor test for awarding ERISA fees which we first announced in Hummell v. S.E. Rykoff & Co., 634 F.2d 446 (9th Cir. 1980). In denying attorney's fees, we noted in Tingey that the application of the five-factor Hummell test "'very frequently suggest[s] that attorney's fees should not be charged against ERISA plaintiffs."' Tingey, 958 F.2d at 909, quoting Carpenters S. Cal. Admin. Corp. v. Russell, 726 F.2d 1410, 1416 (9th Cir. 1984). We believe that the present case is one of those frequent cases where the defendants are not entitled to attorney's fees, as we find no bad faith on the part of Steele, and no evidence of her ability to pay such an award.
 
 III. CONCLUSION
 
 35
 We AFFIRM the finding of the district court that the Plan Administrator did not abuse its discretion in denying Steele's request for DSER benefits. We also AFFIRM the Plan Administrator's ruling that Steele is not entitled to contributory service for the disability payments she received while on medical leave. We REMAND to the district court, however, for a determination of whether and to what extent contributory service is owed to Steele for the vacation pay she received while on medical leave. Each party will bear its own costs for this appeal.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Loral Aerospace purchased Ford Aerospace in October 1990
 
 
 [2]
 The 1988 Plan states, in pertinent part:
 B. Special Early Retirement
 * * *
 (b) On or after January 1, 1989, such a member must meet one of the following conditions:
 (i) The member is unable to perform assigned duties effectively for any one of the following reasons and employment is being terminated by the Corporation ....
 (Emphasis added).
 
 
 [3]
 "Contributory service" refers to periods of employment during which an employee who is a member of the Plan makes contributions to the Plan from his or her salary. The employee's retirement income is then larger than it would be if he or she had not made contributions