46 F.3d 1145
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Thomas SHANNON; Craig Brooks, Plaintiffs-Appellants,
v.
CITY OF COSTA MESA; City of Santa Ana; Paul Walters, Chief
of Police of the Santa Ana Police Department; Raul Luna;
Michael Fleet; Anthony Bertagna; William Letizio; Dave
Snowden; Paul McCarthy; Robert Durham; Burton Santee,
Defendants-Appellees.
 No. 93-56268.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted: Aug. 3, 1994.
Submission Deferred: Aug. 8, 1994.
Resubmitted: Jan. 5, 1995.
Decided: Feb. 3, 1995.
 
 Before: O'SCANNLAIN, T.G. NELSON, Circuit Judges, and MERHIGE,* District Judge.
 MEMORANDUM**
 The parties are familiar with the facts, so we need not recite them here. This appeal involves two separate cases, essentially treated by Thomas Shannon and Craig Brooks as a single case despite a district court ordering the two cases severed. The alleged civil rights violations of the two plaintiffs involved different facts, circumstances, and incidents which occurred on two different days. Santa Ana police officers were involved in both cases. Costa Mesa police officers were involved in only the Shannon case.
 Brooks
 Officers Bertagna, Fleet, and Luna are entitled to qualified immunity. At the time of this incident, the law was not clearly established such that reasonable officers would have known that their actions in deploying a dog and assisting in the canine search for a felony hit-and-run arrestee, who escaped from custody while at a hospital and hid in foliage near a construction zone, violated a clearly established right. See Chew v. Gates, 27 F.3d 1432, 1447-49 (9th Cir. 1994), petition for cert. filed, 63 U.S.L.W. 3463 (U.S. Nov. 28, 1994) (No. 94-980); see also Mitchell v. Forsyth, 472 U.S. 511, 528, 535 (1985); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Brooks has not alleged the type of circumstances or conduct involving use of a police dog that would violate clearly established law. See Chew, 27 F.3d at 1448-49 (citing Mendoza v. Block, 27 F.3d 1357, 1362 (9th Cir. 1994) (giving example of officer siccing dog on handcuffed arrestee)).
 Santa Ana Police Chief Walters is also entitled to qualified immunity. See Chew, 27 F.3d at 1446-50. Chew evaluated the issue of qualified immunity under the assumption that the "departmental policy authorized the use against all concealed suspects of dogs trained to search for and apprehend persons by biting and seizing them." Id. at 1446. In this case, Brooks was not just a concealed suspect; he was an escaped and concealed arrestee.
 The City of Santa Ana, of course, would not be entitled to a qualified immunity defense. Chew, 27 F.3d at 1439. To prevail on a claim against the City of Santa Ana, Brooks must show: (1) the officers violated his constitutional rights, and (2) the City's policy caused the violation. Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 690-92 (1978). Even assuming sufficient evidence of the actual municipal policy at issue here,[1] Brooks has not demonstrated that he was deprived of federally protected rights. See 42 U.S.C. Sec. 1983. He contends that his Fourth Amendment rights have been violated and that he was not afforded the constitutional protections necessary under Graham v. Connor, 490 U.S. 386 (1989), and Tennessee v. Garner, 471 U.S. 1 (1985).
 However, neither of these cases resolved the question of "whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins." Graham, 490 U.S. at 396 n.10. Graham applies to claims "aris[ing] in the context of an arrest or investigatory stop of a free citizen." Id. at 394 (emphasis added); see also id. at 395 n.10. In Garner, police shot and killed a suspect who did not appear to be armed to prevent his escape from the scene of a burglary. 471 U.S. at 4. The use of the dog occurred in this case after Brooks had been arrested, after he escaped from police custody in the hospital, but prior to pretrial detention. Brooks has not alleged that he was subjected to excessive force amounting to punishment. See Graham, 490 U.S. at 395 n. 10. Nor has he made any argument that addresses the factual distinction between his case and the prearrest situations in Graham and Garner.
 "[Section] 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Graham, 490 U.S. at 393-94 (internal quotations omitted). The Fourth Amendment analyses in Graham and Garner do not confer federal rights on Brooks, an escaped felony arrestee, that can serve as a basis for Monell liability. Compare Chew, 27 F.3d at 1439-43; cf. Robins v. Harum, 773 F.2d 1004, 1009-10 (9th Cir. 1985) (a pre-Graham case which held that excessive force by law enforcement official in the course of transporting an arrestee gives rise to a section 1983 claim based upon a Fourth Amendment violation).
 Brooks has not alleged a constitutional basis for his section 1983 claim. There is no basis, therefore, for the imposition of Monell liability on the City of Santa Ana. See Monell, 436 U.S. at 690-92; see also Los Angeles v. Heller, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.").
 The district court properly granted summary judgment in favor of Officers Bertagna, Fleet, Luna, Chief Richardson and the City of Santa Ana.
 Shannon
 Even if the district court erred in granting summary judgment to Santa Ana Officers Letizio and Luna "without notice," because the notice of motion was amended to name the individual officers after Shannon had filed his opposition papers, we affirm the order. Officer Luna, who is in charge of the Santa Ana canine program, and who is alleged in Shannon's complaint to have been involved in adopting the policy, is entitled to qualified immunity just as was Captain McKinley in Chew, who had overall supervisory responsibility for the L.A.P.D. canine program. Chew, 27 F.3d at 1446. Officer Letizio, the canine handler, is entitled to qualified immunity because the law governing his conduct was not clearly established at the time of Shannon's arrest. Id. at 1447-50. Shannon has not alleged the type of circumstances or conduct that would violate clearly established law. See Chew, 27 F.3d at 1448-49. We note that although the district court granted summary judgment to Officers Fleet and Bertagna as well, these officers were not named in Shannon's Third Amended Complaint.
 Santa Ana Police Chief Walters is immune from suit under the qualified immunity doctrine. Chew, 27 F.3d at 1446-50. This leaves the question of the liability of the City of Santa Ana. Even assuming adequate evidence of the actual policy at issue in this case,[2] application of the Graham factors supported the decision to use canine force to arrest Shannon. Cf. Chew, 27 F.3d at 1441-43.
 In determining whether the use of force to effect a seizure is reasonable, "the nature and quality of the intrusion on the individual's interests" must be balanced against "the countervailing government interests at stake." Graham, 490 U.S. at 396 (internal quotation omitted); see also Chew, 27 F.3d at 1440. Three factors are considered in weighing the governmental interests involved: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396 (citing Garner, 471 U.S. at 8-9).
 These factors "are not to be considered in a vacuum but only in relation to the amount of force used to effect a particular seizure." Chew, 27 F.3d at 1441. In Chew, we considered but did not decide whether the use of dogs trained to bite and seize amounts to deadly force. Id. at 1435, 1442. If such use does amount to deadly force, it might be unconstitutional to employ dogs in circumstances like those in Garner. 471 U.S. at 3; see also Chew, 27 F.3d at 1452-53 (Norris, J., concurring in part and dissenting in part). The facts before us, however, are unlike those of Garner or Graham.
 
 
 1
 Shannon, who was seen by police speeding and running red lights at 4:30 a.m., pulled up onto the lawn of a restaurant and fled from police on foot, climbing five fences (including three that were between six and eight feet high and one that was barbed at the top), to hide in oleander bushes in the backyard of a house in a residential area. Construing the evidence in the light most favorable to Shannon, Santa Ana Officer Letizio was not informed about the outstanding warrants, or the nature of the warrants. However, the record reveals that it was undisputed that Letizio was told that Shannon had prior arrests for armed robbery. The Declaration of Robert Mann, relied upon for the assertion that this fact was disputed, speaks to Letizio's alleged knowledge of the warrants, not the armed robbery arrests.
 
 
 2
 "Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." Garner, 471 U.S. at 11. Even assuming that the use of dogs trained to bite and seize constitutes the use of deadly force, we hold that the use of the dog in this case, by officers wishing to prevent harm to themselves and residents in the area, was objectively reasonable.
 
 
 3
 Review of the Graham factors leads to the same conclusion. The most important element, "whether the suspect poses an immediate threat to the safety of the officers or others," Chew, 27 F.3d at 1441, weighs against Shannon. Although Shannon, like Chew, was initially stopped for a traffic violation, Chew stopped for police, produced his driver's license, and spoke with police before his flight. Id. at 1442. As described above, Shannon's situation was different. Furthermore, Shannon hid in a residential backyard, not a commercial junkyard. The safety of residents of the area also had to be considered. Unlike the situation in Chew, there is no material fact question about the immediate safety threat posed by Shannon. Compare id.
 
 
 4
 The other two Graham factors also weigh in favor of the government. As in Chew, an edge goes to the government on whether Shannon was "actively resisting arrest" when he hid in the bushes and did not come out after a canine announcement. See id. When looked at in isolation, the severity of the crime (speeding and running red lights) seems somewhat minimal. However, there was also Shannon's immediate and somewhat elaborate flight, as well as the information given to Letizio that Shannon had been arrested for armed robbery.
 
 
 5
 We conclude that in Shannon's case it is appropriate to determine as a matter of law that it was reasonable for Officer Letizio to release the dog. Accordingly, there is no basis for Monell liability to be imposed upon the City of Santa Ana. Monell, 436 U.S. at 690-92; Heller, 475 U.S. at 799. The district court's grant of summary judgment to the City of Santa Ana is affirmed.
 
 
 6
 Shannon filed his opposition to the summary judgment motion of the Costa Mesa defendants three days late. The district court granted the summary judgment motion on the ground that Shannon filed no opposition. Summary judgment is not an acceptable sanction for failure to abide by a local rule. Marshall v. Gates, No. 93-55022, slip op. at 105-06 (9th Cir. Jan. 4, 1995). However, unlike Chief Gates' papers in Marshall, the Costa Mesa defendants met their burden of demonstrating an absence of genuine issues for trial. Id. at 106. We therefore affirm the grant of summary judgment to the Costa Mesa defendants.
 
 
 7
 Costa Mesa Police Sergeant Santee, who requested a Santa Ana canine officer and who Shannon also contends had a duty to intervene in the dog attack, is entitled to qualified immunity. The law governing his conduct was not clearly established at the time of Shannon's arrest. Chew, 27 F.3d at 1447-50. Officer McCarthy, who initially followed Shannon on foot and who Shannon contends had a duty to intervene in the dog attack, is also entitled to qualified immunity. Id.
 
 
 8
 To the extent that Shannon alleges that Sergeant Durham authorized, caused and/or permitted the use of the dog, he is entitled to qualified immunity. Id. Shannon also predicated Durham's liability on his alleged fabrication of Shannon's criminal history and the broadcast of this information to the officers in the field. However, while Shannon's opposition attempted to set forth many factual questions concerning Shannon's "arrest package," it failed to support the fabrication claim, or the claim that Shannon's prior history was unknown to officers at the time the dog was used to search for him. Shannon failed to meet his summary judgment burden on this point, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986), and Durham is entitled to summary judgment.
 
 
 9
 Costa Mesa Police Chief Snowden is entitled to qualified immunity. Chew, 27 F.3d at 1446-50. Because there is no basis for Monell liability to be imposed upon the City of Santa Ana, there is no basis for such liability to be imposed upon the City of Costa Mesa.
 
 The Declarations and The State Law Claims
 
 10
 Even if the district court erred in concluding that the declarations of Peter Meade, M.D., and VanNess Bogardus, III, were inadmissible, they are insufficient to withstand the summary judgment motions in these cases.
 
 
 11
 Under the circumstances, it is not necessary to remand the dismissal of the state law claims to the district court for a reexamination of the four categories enumerated in 28 U.S.C. Sec. 1367(c) in accordance with Executive Software N. Am., Inc. v. United States Dist. Ct., 24 F.3d 1545 (9th Cir. 1994). First of all, the district court properly dismissed all claims over which it had original jurisdiction. See 28 U.S.C. Sec. 1367(c)(3). To require a remand for the court to specify subsection 1367(c)(3) as a specific ground for dismissal based on Executive Software (decided after the district court's order in these cases), would elevate form over substance. More importantly, the district court properly dismissed the state law claims without prejudice because they were insufficiently pleaded. Although Shannon and Brooks contended at oral argument that they should have been given leave to amend, they did not make this argument in their opening brief. The issue is therefore waived. Officers for Justice v. Civil Serv. Comm'n, 979 F.2d 721, 726 (9th Cir. 1992), cert. denied, 113 S. Ct. 1645 (1993).
 
 CONCLUSION
 
 12
 We have considered the other arguments made by the appellants and conclude that no discussion is necessary. The summary judgments in favor of the defendants in the cases brought by Brooks and Shannon are AFFIRMED.
 
 
 13
 AFFIRMED.
 
 
 
 *
 Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 A copy of the Santa Ana Canine Policy was included in plaintiffs' belatedly filed "Index and Excerpts of Testimony and Relevant Reports in Opposition to Motion for Summary Judgment." The district court refused to consider these belatedly filed documents. The court's refusal to consider these documents is "not specifically and distinctly raised and argued" in the opening brief, and will therefore not be considered on appeal. Officers for Justice v. Civil Serv. Comm'n, 979 F.2d 721, 726 (9th Cir. 1992), cert. denied, 113 S. Ct. 1645 (1993)
 
 
 [2]
 See n.1, supra. Shannon also points out that in response to requests for admission, the City of Costa Mesa stated that the use of the dog to find and bite him was in accordance with the policies and practices of the City of Costa Mesa Police Department and pursuant to the authorization and directives of Costa Mesa Police Chief Snowden and Santa Ana Police Chief Walters